W. L. DIAMOND, GUARDIAN, v. J. W. ROTAN ET AL.

Decided December 16, 1909, January 14, 1910.

**1.—Deed—Restraint on Alienation.**

A restraint on the power of alienation, incorporated in a deed or will otherwise conveying a fee simple right to the property is void. So also is a limitation over to others in case the first grantee shall alienate the estate granted.

**2.—Same.**

When it appears from the whole instrument that the primary purposes of restrictions is to prevent alienation of the property and not merely to fix limitation to the estate conveyed, the form in which the intent of the grantor may be expressed is immaterial. The same effect will be given to conditions terminating the estate of the grantee upon his alienation and limiting the remainder to others as to clauses forbidding alienation unaccompanied by any terms of forfeiture.

**3.—Same—Case Stated.**

A mother conveyed land to her son for his natural life "unless the same or some part thereof should be sold by him or some of his creditors, in which event said land and the title thereto is to immediately vest in his children, if any there be living at the time" and if none, then in the grantor or her heirs, if she should be dead, and in case the grantee still owned the land at his death it was then to become the property of his heirs. Held, that the conveyance vested a fee simple estate in the grantee; that the restriction upon its alienation was invalid, being an attempt to accomplish by a deed upon conditions that which could only be done in the form of a spendthrift trust, and that the fee during the life of grantee was subject to sale under execution by his judgment creditors.

**4.—Same.**

The evidence showing that grantee was the sole heir of grantor and that he married and had children born before her death, it seems that if the conditions in the deed were valid and the alienation ipso facto terminated his estate under the deed, his rights as an heir to the reversion and remainder as well as to the estate for life would form a fee simple estate in him, he being invested at one time with all the component parts of the entire estate a merger of which in him would defeat a contingent remainder limited to his children. This result would not be affected by article 626, Revised Statutes, providing that the union of any particular estate with the inheritance should not impair the estate in remainder, since in such case there is union with the particular estate not only of the inheritance but also of the contingent remainder.

ON REHEARING.

**5.—Estates upon Limitation.**

Estate upon limitation defined and distinguished from estates upon condition.

Appeal from the District Court of Fannin County. Tried below before Hon. Ben H. Denton.

*L. M. Morris* and *Richard B. Semple,* for appellant, cited: Simonton v. White, 93 Texas, 50; Wallace v. Campbell, 53 Texas, 229; Gamble v. Dabney, 20 Texas, 76; Monday v. Nance, 92 Texas, 428; Moore v. City of Waco, 85 Texas, 211; Patten v. Herring, 9 Texas Civ. App., 646; Berry v. Spivey, 44 Texas Civ. App., 18; Nichols v. Eaton, 91 U. S., 716; Freeman on Executions, sec. 189a; DePeyster v. Michael, 57 Am. Dec., 488.

*McGrady & McMahon* and *Spencer & Baker,* for appellees.—The deed from Leanna Leonard conveyed to W. H. Leonard a fee-simple title, and the attempted limitation over, being an attempted restraint on alienation, is void for contradiction and because against the policy of the law which forbids a restraint on alienation of a fee-simple title. Potter v. Couch, 141 U. S., 296, 35 L. ed., 721; Kessner v. Phillips (Mo.), 88 S. W., 66; Streit v. Fay, 120 Am. St. Rep., 304; Twitty v. Camp, Phil. Eq. (N. C.), 61; Walker v. Vincent, 19 Pa. St., 369; Mandlebaum v. McDonell, 18 Am. Rep., 61; Gray's Restraint on Alienation, secs. 20 to 30 inclusive (2d ed.); Schermerhorn v. Negus, 1 Denio, 448; DePeyster v. Michael, 6 N. Y., 467, 57 Am. Dec., 470; 2 Jar., Wills, 529 to 535; 2 Redf., Wills, 288-89; Brothers v. McCurdy, 36 Pa. St., 407; King v. Burchell, Ambler, 379; Bradley v. Peixotto, 3 Ves., 324; Ware v. Cann, 10 Barn. & C., 433; Shaw v. Ford, L. R., 7 Ch. Div., 669; Corbett v. Corbett, L. R., 13 Prob. Div., 136; Re Roscher, L. R., 26 Ch. Div., 801; Greated v. Greated, 26 Beav., 621; Re Machu, 21 Ch. Div., 838; Re Dugdale, 38 Ch. Div., 176; Newton v. Reed, 4 Simons, 141; Jones' Will, 23 L. T. R., 211; 3 Davidson's Conveyancing (3d ed.), 111n.

Even if the condition or limitation in the deed were valid, it became united and merged with the remainder of the title in the grantee, W. H. Leonard, upon the death of his mother, the grantor, leaving him her heir, and would not revive upon the grantee's subsequent marriage and having children. Rice v. Railway Co., 12 Allen, 141; Craig

v. Warner, 60 Am. Rep., 381; Fearne, Contin. Rem., 343 et seq.; Preston on Merger, 492; Hooker v. Hooker, Cas. Temp. Hardw., 13.

HODGES, ASSOCIATE JUSTICE.—The determination of the principal question presented in this appeal involves the construction of a deed of gift from Mrs. Leanna Leonard to her son W. H. Leonard. It was made in 1888, and conveyed to W. H. Leonard the land in controversy. Omitting the description of the land the deed is as follows:

"This indenture made this Feb. 18, 1888, by and between Leanna Leonard as a single person of the county of Buchanan and State of Missouri, party of the first part, and William Henry Leonard of the county of Buchanan, State of Missouri, party of the second part, witnesseth, that whereas, the said party of the first part, for and in consideration of love and affection and the sum of one dollar to her paid by the said party of the second part, the receipt whereof is hereby acknowledged, do by these presents remise, release and forever quitclaim unto the said party of the second part the following described lots, tracts or parcels of land lying and being and situate in the county of Fannin and State of Texas, subject to the conditions herein stated, to wit: (Description omitted.) To have and to hold the same unto him the said William Henry Leonard for and during his natural life unless the same or some part thereof should be sold by him or some creditor of his, in which event said land and the title thereto is to immediately vest in his children if any there be living at the time, share and share alike, or if he then have no children living then in the said Leanna Leonard if living, or if he then have no children and the said Leanna Leonard should be dead, then in the heirs of said Leanna Leonard, and at the death of said William Henry Leonard if the title to said land should still be in him, without being vested in others, as hereinbefore provided, then same is to go to and become the property of his heirs, together with all and singular the rights, privileges and appurtenances thereto belonging."

Mrs. Leonard died in 1890 or 1891 without leaving any other children, so far as is disclosed by the record. At the time of the execution of this deed, and at the time of the death of Mrs. Leonard, W. H. Leonard was unmarried. In 1895, about six years after the death of his mother, he married Daisy Leonard, one of the appellees in this suit, by whom he had two children, Henry and John, aged ten and seven years respectively at the time of the trial in the court below. W. H. Leonard and his wife resided upon the land in controversy as their homestead for several years prior to the institution of this suit, and 200 acres of that land is still claimed as a homestead by the wife, Daisy Leonard. In 1908 R. L. Holcomb recovered a judgment against W. H. Leonard for the sum of $706.55 and costs of suit. By virtue of an execution issued upon this judgment the land in controversy was sold, and the appellees McGrady and Rotan claim under that sale.

On May 30, 1908, a conveyance was executed by W. H. Leonard, in which he was joined by his wife, conveying the property in suit to their minor children Henry and John L., and Rhodes S. Baker; to the latter in the double capacity as trustee for Mrs. Daisy Leonard and in his individual behalf. The deed set apart in trust for Mrs. Leonard for

life 150 acres; to Baker, in consideration of his services as an attorney in securing the deed of settlement and for money advanced to Leonard as a consideration for the conveyance, a reasonable interest in the entire tract of land, to be fixed by some court of competent jurisdiction upon application therefor; to the minors Henry and John L. was given an absolute fee simple title to all the remainder of the premises, and all interest in remainder after the termination of the life estate of Mrs. Leonard. The consideration expressed was love and affection for the children, the payment of $50, and the legal services rendered by Baker.

The testimony showed that Leonard was a man of spendthrift habits; that he wasted his means and failed to support his family. The family was without any property or means of support except the premises in controversy and the income from it. Rhodes S. Baker was employed by Mrs. Leonard to secure the deed of settlement above referred to, and he advanced the fifty dollars recited as a part of the consideration.

In October, 1908, this suit was instituted by John L. Leonard as the next friend of the minors Henry and John L. against Rotan, W. H. Leonard, Daisy Leonard and Rhodes Baker, to recover all of the land described in the original deed. Previous to the trial John L. Leonard died, and W. L. Diamond was appointed guardian of the estates of the minors and permitted to appear and prosecute the suit.

In his petition Diamond sets forth the facts substantially as stated here, and claims that the estate of W. H. Leonard in the land terminated by the sale made by the creditor Holcomb and by Leonard's deed to Baker and Mrs. Leonard, charging that these were breaches of the conditions imposed in the original deed, that by the terms of that instrument the occurrence of those contingencies operated to vest the remainder in fee in the minors for whose benefit he sues. He asks for judgment for the entire tract of land, in his capacity as guardian. The defendants in the court below answered, setting up their claims as evidenced by the deeds under which they claimed. The case was tried before the court without a jury, and a judgment rendered in favor of the defendants, denying the right of the guardian to any portion of the property, but recognizing the distribution made in the deed above referred to from W. H. Leonard. To Baker was given, as a reasonable compensation for his services, a one-tenth interest in the property. The title of the appellees, McGrady and Rotan, was limited to the excess over the homestead of 200 acres. The guardian alone has appealed.

At the request of the appellant the court filed conclusions of fact and of law; and in his conclusions of law holds that the original deed from Mrs. Leanna Leonard to W. H. Leonard vested in the latter a fee simple estate to the entire tract of land. The only errors assigned in this court are those which question the correctness of this conclusion of law and the further conclusion holding that the appellees, McGrady and Rotan, were entitled to any portion of the property. If the court was correct in concluding that Leonard took from his mother an absolute fee-simple estate in the land, it logically follows, from the facts in evidence, that he must also have been correct in holding that the excess over the homestead claim of Leonard was subject to execution and sale at the instance of a creditor, and that McGrady and

Rotan had acquired a good title to that portion. It is apparent, therefore, that the entire appeal must be determined by a review of the legal conclusion complained of by the first assignment of error. The question is, did W. H. Leonard take under the deed from his mother an absolute fee-simple estate, or merely a qualified fee held upon condition? The grant was for and during his natural life, and at his death, if the title was still in him without having been devested by a breach of the conditions named, it passed to his heirs generally. The legal effect of this language, if the conditions imposed are to be ignored as void, conveys an absolute fee-simple estate. Seay v. Cockrell, 102 Texas, 280, 115 S. W., 1160. But if those conditions are to be given effect, then Leonard took only a qualified or conditional fee, and the court erred in holding to the contrary. The only ground upon which the court could have disregarded the conditions specified in the deed is that they were void as being a restraint upon the alienation of a fee-simple estate. That a general restraint upon the power of alienation, when incorporated in a deed or will otherwise conveying a fee-simple right to the property is void, is now too well settled to require discussion. Potter v. Couch, 141 U. S., 296, 35 L. ed., 721; Seay v. Cockrell, 102 Texas, 280, 115 S. W., 1160; Kessner v. Phillips, 189 Mo., 515, 107 Am. St. Rep., 368, 88 S. W., 66; Simonton v. White, 93 Texas, 50, 77 Am. St. Rep., 824, 53 S. W., 339; White v. Dedmon, 57 S. W., 870; Laval v. Staffel, 64 Texas, 371; Bouldin v. Miller, 87 Texas, 359, 28 S. W., 940; Latimer v. Waddell, 119 N. C., 370, 3 L. R. A. (N. S.), 668, and cases cited in notes; Tiedeman on Real Prop., sec. 204; 24 Am. & Eng. Ency., 864. The apparent uniformity of the ruling does not extend to all the forms in which this restrictive power is sought to be exercised in deeds and wills. The most frequent occasions where courts have been called upon to interpose this objection occur where the deed or will merely contains a clause forbidding the alienation indefinitely, or providing that the property conveyed shall not be sold for the debts of the grantee by any creditor, without at the same time providing that the first estate shall thereby terminate and vest in another. In such cases the rule has been upheld with practical unanimity by the courts of the country, as well as by the text writers. But in cases where the instrument to be construed contains a provision to the effect that if the grantee sells any part of the property, or it shall be sold at the instance of a creditor, the estate conveyed shall cease and the title to the property thereupon pass to another named person, or revert to the grantor, there has arisen some diversity of opinion as to the propriety of holding such restrictions void. Mandlebaum v. McDonell, 29 Mich., 78, 18 Am. Rep., 61; Bennett v. Chapin, 77 Mich., 538, 7 L. R. A., 377; Conger v. Lowe, 124 Ind., 368, 9 L. R. A., 165; Fowlkes v. Waggoner, 46 S. W., 586. The use of language falling within the last-named class of cases is what surrounds the construction of the deed here under consideration with some difficulty. The deed provides that W. H. Leonard should have and hold the land during his natural life "unless the same or some part thereof should be sold by him or some creditor of his, in which event said land and the title thereto is to immediately vest in his children if any there be living at the time, share and share alike, or if he then

have no children living, then in the said Leanna Leonard if living, or if he then have no children and the said Leanna Leonard should be dead, then in the heirs of said Leanna Leonard, and at the death of said William Henry Leonard, if the title to said land should still be in him, without being vested in others, as hereinbefore provided, then same is to go to and become the property of his heirs." It is evident from the language quoted that if the condition be treated as one which may legally be engrafted upon instruments of this character, it would have the effect of terminating the estate of W. H. Leonard upon an alienation of the property by him or by any creditor of his.

While adhering to the application of the general rule as hereinbefore stated, the courts of this State, so far as we have been able to ascertain, have not passed upon a provision couched in language, precisely or substantially the same as that contained in this instrument. However, we are not without eminent authority from other sources. In the case of Potter v. Couch, supra, the Supreme Court of the United States uses this language: "But the right of alienation is an inherent and inseparable quality of an estate of fee simple. In a devise of land in fee simple, therefore, a condition against all alienation is void because repugnant to the estate devised. . . . For the same reason the limitation over, in case the first devisee shall alien, is equally void, whether the estate be legal or equitable. (Citing authorities.) And on principle, and according to the weight of authority, a restriction, whether by way of condition or of devise over, not forbidding alienation to particular persons or particular purposes only, but against any and all alienation whatever during a limited time of an estate in fee, is likewise void as repugnant to the estate of the first taker by depriving him during that time of the inherent power of alienation." The language of that decision is especially applicable here, and may be considered authoritative, in· as much as the case there being reviewed involved the construction of a provision very similar. to the one in this deed. In Kessner v. Phillips, also cited above, the instrument construed contained a provision stipulating that in case the grantee should sell, or attempt to sell or encumber the premises conveyed at any time during thirty years, the title should immediately vest in other named parties or their heirs or assigns. In disposing of the question the Supreme Court of Missouri, after citing and discussing a large number of cases, reached the conclusion that such a provision should be treated as a nullity, by reason of·being a restriction upon the free alienation of an estate otherwise absolute.

Upon principle we can see no distinction between the two classes of cases, when it appears from the whole instrument that the primary purpose of the condition or restriction is to prevent alienation of the property, and not merely to affix a limitation to the estate conveyed. If clauses forbidding alienation, when unaccompanied by any terms of forfeiture, or devises, or grants over, rise to the dignity of conditions capable, if valid, of defeating the continuation of the estate in the first grantee, they stand upon an equal footing with conditions containing those express stipulations. If they do not, then it would not become necessary to hold them invalid in order to preserve the first estate conveyed. It is only when they are treated as conditions, and

not as mere covenants, and insurmountable, if valid, that it becomes necessary to eliminate them by assailing their validity. If a clause restraining the free alienation of property is not expressed in terms which are sufficient to determine the estate, it can not be said that it has that effect, and there is no occasion to invoke the powers of the courts to declare them invalid. On the other hand, if the language used creates such a condition, which, if valid, would defeat the first estate, the form in which the intent of the grantor may be expressed is immaterial. The fact that the grantor says the first estate shall upon the happening of such contingency terminate, is entitled to no more weight than should be given language from which the law would imply such an intention.

In the present case it clearly appears that the primary purpose of Mrs. Leanna Leonard was not to limit the tenure of her son, but to shield him from his creditors and his own improvidence. While endowing him with full power to manage and control the property, enjoy all of its usufruct, and pass it at his death to his heirs generally, thus vesting in him an estate in fee simple, she sought to take from her grant some of the essentials which the law invariably attaches to such property rights. This was evidently done, not for the purpose of limiting or diminishing a right, but of protecting and prolonging the right and its enjoyment. If Mrs. Leanna Leonard desired to create a spendthrift trust, the law has pointed out a method by which this can be done. Kessner v. Phillips, supra. But she could not invest her son with an absolute legal and equitable title to the property and take from him those elements and liabilities with which the law clothes such owner.

There is still another view that may be taken of this case; and while not resting our decision upon that ground, we think it worthy of being referred to. The record fails to show that Mrs. Leanna Leonard at her death left any child, or children, or their descendants, other than the appellee W. H. Leonard. If we may infer from this that he was the only heir of his mother at her death, then upon the happening of that event he became invested with all the rights and interests held by her, including the possibility of reverter, based upon the occurrence of the contingency mentioned in the deed. The testimony shows that there was an interval of about six or eight years between the death of Mrs. Leanna Leonard and the birth of the first child of W. H. Leonard. Let us suppose that during that time a creditor had sold the property, or that Leonard had himself disposed of it; what then would have been the estate acquired by such purchaser? If we treat the condition in this deed as valid, and the alienation as *ipso facto* terminating his estate under the deed, Leonard's rights as an heir to the reversion, and remainder, would immediately come into existence and form the basis of a fee-simple estate. In short, there was during that time merged in him all the component parts of a complete fee-simple right. The limitation to his children, then unborn, was a mere contingency that did not amount to a vested estate. During the interval between the death of his mother and the birth of his children Leonard stood as the sole representative of all those who could take for a breach of the conditions in the deed. Having thus

been endowed at one time with all the component parts of the entire estate, it would seem that there was a complete merger, and the contingent remainder limited to the children thereby defeated. Article 626 of the Revised Civil Statutes provides that the union of any particular estate with the inheritance, by purchase, or by descent, shall not operate so as to defeat, impair or in anywise affect the remainder. It was probably the purpose of this statute to abolish the common law technicalities regarding the characteristics of the particular estate essential to support a remainder, and also to prevent equally technical results from following the union of the particular estate with the inheritance in the same person. Here, however, we have not only a union of the inheritance with the particular estate, but of the contingent remainder also. It does not present the situation of destroying an intervening estate by the union of the extremes, but one in which there is an absorption by one person of all the estates possible to be carved out of the fee simple. This being true, the birth of children afterwards would not operate to devest him of the contingent remainder limited over. While the possibility of reverter, limited to take effect upon the happening of the contingency provided against, is not an estate which may be conveyed, it is nevertheless one capable of being inherited. North v. Graham, 235 Ill., 178, 126 Am. St. Rep., 189, 18 L. R. A. (N. S.), 624. Having been inherited by Leonard from his mother at her death, it completed in him the fee-simple estate.

As stated, while not resting our disposition of the assignments of error upon this proposition, we think it entitled to some consideration, assuming the validity of the conditions discussed. For the reasons first given, the judgment of the District Court is affirmed.

### ON REHEARING.

In the motion for rehearing counsel for appellant insist with much earnestness that we have placed an erroneous construction on the deed from Mrs. Leonard to W. H. Leonard. It is contended that the legal effect of that deed was to invest W. H. Leonard with "an estate upon limitation," and his children with an "estate upon conditional limitation." It is immaterial in disposing of this question whether we construe the deed from Mrs. Leonard as conveying to W. H. Leonard the fee or only a life estate subject to the conditions inserted, if we hold that his is not an estate upon limitation as defined in law. The question is, was his an estate upon condition, or one upon limitation? Mr. Tiedeman, in his work on Real Property, section 211, says: "An estate upon limitation is one which is made to determine absolutely upon the happening of some future event as an estate to A, so long as she remains a widow. The technical words generally used to create a limitation are conjunctions relating to time, such as *during, while, so long as, until*, etc. But these words are not absolutely necessary; for where it is necessary, in order to carry out the intent of the grantor, to construe an estate to be a limitation, it will be done, even though words, ordinarily used in the creation of an estate upon condition, appear in their stead. An estate upon limitation differs from one upon condition in this, that the estate is determined *ipso facto* by the happening

of the contingency, and does not require any entry by the grantor in order to defeat it. A conditional limitation is an estate limited to take effect upon the happening of the contingency, and which takes the place of the estate which is determined by such contingency. Some authors, among others Mr. Washburn, have used the terms conditional limitations and limitations interchangeably, referring in both instances to the estate which is determined by the happening of the event. But it appears to be the better method to apply the term *conditional limitation* to the estate which takes effect, and *limitation* to the estate which is determined. A conditional limitation is an estate limited to take effect after the determination of an estate, which in the absence of a limitation over would have been an estate upon condition. Strictly speaking, a conditional limitation can not be limited after an estate upon limitation, except where the contingency which constitutes the limitation is not sure to happen and the estate is a fee upon limitation. Thus in a grant to A during widowhood, and upon her marriage to B, A's estate would be an estate upon limitation, and consequently B's estate would be a good common-law remainder." Mr. Washburn also, in discussing the same subject, uses this language: "In a conditional limitation, the estate determines, *ipso facto,* upon the happening of the event, and goes over, at once, to the grantor by reverter, or to the person to whom it is limited upon the happening of such contingency. So if the breach of a condition be relieved against in chancery, or excused by becoming impossible by the act of God, the estate to which it is annexed remains unimpaired, whereas a limitation determines an estate from whatever cause it arises. This distinction may be illustrated by a familiar example. A grant to A. B., provided she continues unmarried, is an estate upon condition, and if she marries, nobody can take advantage of it to defeat the estate but the grantor or his heirs. But a grant to A B, so long as she continues unmarried, is a conditional limitation. The moment she marries, the time for which the estate was to be held has expired, and the estate is not technically defeated but determined." 2 Wash. on Real Prop. (3d ed.), p. 20. The distinction between an estate upon limitation and one upon condition may in most instances be easily discerned. In the former the event or occurrence relied upon to determine the first estate and as the beginning of another merely marks the end or limit of the first, and thus indicates the boundary between the two, while in estates upon condition it actively defeats what might otherwise be a greater interest. In the deed before us the granting clause is sufficient to invest W. H. Leonard with an estate for life, defeasible if he or any creditor sells the property. But for this provision Leonard would unquestionably be endowed with an estate in fee for life. It would have been otherwise had Mrs. Leonard conveyed the land "until he became insolvent," or "until he or some creditor sold it." Here no greater estate than that marked by the occurrence of insolvency or alienation would have been possible under the terms of the grant. The condition of insolvency, or the act of alienation, would not operate as a forfeiture to defeat an otherwise greater estate, but simply indicate the termination of the only interest conveyed.

If the estate held by Leonard be one upon condition, and the condi-

tion be void for the reasons pointed out in the original opinion, it logically follows that he was endowed by the deed from his mother with such an interest as the terms of the deed would convey with the condition omitted. This we held would be a fee, and we still adhere to that conclusion. The motion is overruled.

*Affirmed.*

Writ of error refused.