[Civ. No. 2916.    Second Appellate District, Division Two.—July 10, 1919.]

## TITLE GUARANTEE & TRUST COMPANY (a Corporation), Appellant, v. H. L. GARROTT, Respondent.

[1] DEEDS—DEFEAT OF ESTATE CONVEYED—CONDITION SUBSEQUENT.— Where it clearly appears by a deed that it was the intention of the parties that, upon a breach of the restriction, the estate conveyed to the grantee should be defeated and should return to the grantor, the restriction is a condition subsequent and not a covenant.

[2] ID.—INHIBITION OF CONVEYANCE TO CERTAIN NATIONALITIES—UNLAWFUL RESTRAINT ON ALIENATION.—A condition in a deed providing for a forfeiture of the title conveyed in the event that the vendee, or her assignees, should lease or sell the property to any person of African, Chinese, or Japanese descent, prior to a given date, violates the common-law rule, of which section 711 of the Civil Code is declaratory, that "conditions restraining alienation, when repugnant to the interest created, are void."

[3] ID.—ANY RESTRAINT ON ALIENATION VOID.—Any restraint on alienation, either as to persons or time, is invalid.

[4] ID.—FORM OF RESTRAINING PROVISION IMMATERIAL.—A provision in a deed restraining alienation, either as to persons or time, is void, whether it be regarded as a condition subsequent or as a limitation over—a limitation conditioned upon the lease or sale of the premises to persons of the proscribed class—or as a covenant running with the land.

APPEAL from a judgment of the Superior Court of Los Angeles County.   John W. Shenk, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Wm. T. Blakely for Appellant.

Willis O. Tyler for Respondent.

Arthur Crum, *Amicus Curiae.*

1. Validity of conditions and restrictions in deeds, note, 95 Am. St. Rep. 215.

3. Validity of partial or limited restraint on alienation of fee-simple estate, notes, 7 Ann. Cas. 319; Ann. Cas. 1916D, 1254.

FINLAYSON, P. J.—This is an appeal from a judgment against plaintiff after a demurrer to its complaint had been sustained without leave to amend. The appeal involves the validity of a condition in a deed providing for a forfeiture of the title conveyed in the event that the grantee should lease or sell to persons of African descent prior to January 1, 1925.

Plaintiff, being the owner of 127 lots in the Angelus Park Tract, in the county of Los Angeles, conveyed one of the lots to Pauline Kasanofska, under whom defendant claims title, by a deed the provisions of which, after the granting clause, so far as material to the question presented, are as follows: "It is provided, however, and the said party of the second part, [the grantee] by the acceptance hereof, for herself, her heirs and assigns, hereby covenants and agrees to and with the said party of the first part, [the grantor] its successors and assigns, as follows: That neither the said party of the second part, nor her heirs or assigns, shall or will . . . lease or sell any portion of said premises to any person of African, Chinese or Japanese descent, and that if at any time the said party of the second part, her heirs, assigns or successors in interest, or those holding or claiming thereunder, shall violate any of the provisions herein named, whether directly or under some evasive guise, thereupon the title hereby granted shall revert to and be vested in the said party of the first part, its successors and assigns, and its successors and assigns shall be entitled to the immediate possession thereof. Which covenants shall be construed to be covenants running with the land, but shall cease and terminate at option of the owner, for the time being, after January 1, 1925." The deed, which bore date November 12, 1910, was duly recorded on November 26, 1910. Thereafter, by mesne conveyances, the lot was conveyed to defendant, a negro of African descent, subject to the covenants and conditions in the deed to Pauline Kasanofska. Prior to and since the grant of the lot to Pauline Kasanofska, plaintiff, by deeds containing similar covenants or conditions, has conveyed many of the other lots to various persons, who have erected homes on their respective lots and have complied with the conditions contained in their deeds. The whole tract is now thickly settled with persons of the Caucasian race. Claiming that the provision inhibiting a conveyance

to persons of African descent created a condition subsequent, that, by reason of its violation, the fee conveyed to defendant's predecessor, Pauline Kasanofska, has been forfeited, and that, therefore, it is entitled to re-enter for condition broken and to a reconveyance under section 1109 of the Civil Code, plaintiff brought this action, praying the court to compel a reconveyance and that it be placed in possession.

[1] We think the provision in the deed relied upon by plaintiff as the basis of its claim for relief created a condition subsequent and not a covenant. Where, as here, it clearly appears by the deed that it was the intention of the parties that, upon a breach of the restriction, the estate conveyed to the grantee should be defeated and should return to the grantor, the restriction is a condition subsequent. (*Ball* v. *Miliken,* 31 R. I. 36 [Ann. Cas. 1912B, 30, 37 L. R. A. (N. S.) 623, 76 Atl. 789].) But whether the provision be construed as a condition or a covenant, we think it is a nullity and that the demurrer to the complaint very properly was sustained.

We do not base our conclusion upon any supposed constitutional right of respondent; we do not think that the condition in the deed violates any provision of the state or federal constitution. Upon this aspect of the case we agree with what is said by the Louisiana supreme court in *Queensborough Land Co.* v. *Cazeaux,* 136 La. 724, [Ann. Cas. 1916D, 1248, L. R. A. 1916B, 1201, 67 South 641]. The fourteenth amendment, in so far as it prohibits any abridgment of the privileges or immunities of citizens of the United States and guarantees the equal protection of the laws to all persons, addresses itself to the state government and its instrumentalities, to its legislative, executive, and judicial authorities, and not to contracts between individuals. It is state action of a particular character that is prohibited. Individual invasion of individual rights is not the subject matter of the amendment. (*Civil Rights Cases,* 109 U. S. 18, [27 L. Ed. 835, 3 Sup. Ct. Rep. 18, see, also, Rose's U. S. Notes].) The fourteenth amendment, it is true, applies to the judicial as well as the legislative department of the state government. But the judiciary does not violate this provision of the federal constitution merely because it sanctions discriminations that are the outgrowth of contracts made by individuals. A different question would be presented if the court, while sanctioning such a provision against persons of African descent

as we find in the deed in question here, were subsequently to hold to be invalid a similar provision directed against Hindus, Cingalese, and Maoris, or any other class of persons except negroes. The equal protection clause of the fourteenth amendment makes but one demand upon the state, and gives to the state but one right. It is that the state shall make, execute, and interpret its laws without discrimination. It must not grant rights to one which, under similar circumstances, it denies to another. Upon this phase of the question see the note to *Queensborough Land Co.* v. *Cazeaux, supra,* L. R. A. 1916B, p. 1208.

[2] We think, however, that the condition against leasing or selling to persons of African descent violates the common-law rule of which section 711 of the Civil Code is declaratory: ''Conditions restraining alienation, when repugnant to the interest created, are void.''

The deed is not set forth in full in the complaint. We shall assume, however, as counsel themselves have in their briefs, that the deed to Pauline Kasanofska, both in its granting clause and its *habendum* clause, conveyed to the grantee the full fee title, so that the interest created by the deed was title in fee simple absolute. This being so, the real question is whether the condition forbidding alienation to persons of African descent at any time before January 1, 1925, is such a restraint on alienation as to be repugnant to the interest created by the granting and *habendum* clauses, within the meaning of section 711, or of the common law of which that section is declaratory.

Two cases, and two cases only, have come under our notice wherein the courts have passed directly upon a condition in a deed imposing a restraint on alienation such as that now before us. Those two cases are *Queensborough Land Co.* v. *Cazeaux, supra,* and *Koehler* v. *Rowland,* 275 Mo. 573, [205 S. W. 217]. In each of these cases it was held that a condition in a deed providing for forfeiture in case the premises should be sold or leased to a negro is not an unlawful restraint upon the power of alienation. As we are constrained to disagree with each of these cases, a somewhat more elaborate presentation of the reasons for our conclusion is demanded than ordinarily would suffice.

Ever since the statute *quia emptores,* the tying up of real property has been regarded as an evil. Prior to that

statute, restraints upon alienation of lands held in fee simple were practically an inseparable part of the ancient feudal system. All land in the kingdom was holden mediately or immediately of the king, styled the lord paramount; and the great lords, holding immediately under the king, when they granted portions of their lands to others, were still tenants with respect to the king, and were called mesne, or middle, lords. The lord had an interest in having a brave and loyal tenant, capable of rendering military service; and, on the other hand, the tenant was interested in living under the military chief of his own choice and adoption. The result was that certain reciprocal rights and incidents sprung out of these feudal tenures, among which were fealty and escheat. The tenant owed fealty to his lord; escheat was the reversion of the estate on a grant in fee simple upon a failure of heirs of the owner. These grants by the mesne lords were called subinfeudations. The grantee, owing fealty to his lord and grantor, could not alienate his land without the license or consent of his lord, who was the owner of the reversionary interest contingent upon the death of the grantee without heirs. All this was changed in the reign of Edward I by the statute *quia emptores,* which provided "that from henceforth it shall be lawful for any freeman to sell at his own pleasure his lands and tenements, or part of them, so that the feoffee shall hold the same lands and tenements of the chief lord of the same fee, by such service and customs as the feoffor held before." By declaring that every freeman might sell his lands at his own pleasure, parliament, by one stroke of the pen, broke down the last remnant of the feudal restrictions upon alienation that formerly had prevented the tenant from selling his land without the license of his grantor and feudal lord. By changing the tenure from the immediate to the paramount lord, the king, the statute took away the reversion from the immediate lord, and thus deprived him of the power of imposing any restraint, by contract or condition, expressed in the deed of conveyance.

Whether the statute *quia emptores* ever became effectual in any of the United States by express or implied adoption, or as a part of the common law, we need not stop to inquire, since it is clear that with us no such statute is

needed, as here all lands are held *in allodium,* and with us no such right of escheat or possibility of reverter ever existed in the party conveying the estate. Here all sovereignty is in the state, and escheat can only accrue to the state as the sovereign. Therefore, the question of the right to impose conditions or restrictions upon alienation stands upon common-law reasons, as it has stood in England since the statute *quia emptores.* See the able and elaborate opinion of Mr. Chief Justice Ruggles in *De Peyster* v. *Michael,* 6 N. Y. 467, [57 Am. Dec. 470], for a complete commentary upon this topic.

Ever since the statute *quia emptores* the tying up of real property has been regarded as an evil that is incompatible with the free and liberal circulation of property as one of the inherent rights of a free people. In order to prevent this evil two doctrines were established: One that all interests should be alienable; the other that all interests must arise within certain limitations of time. The latter doctrine is known as the rule against perpetuities. It is the first doctrine with which we are concerned.

The rule that conditions restraining alienation, when repugnant to the estate conveyed, are void, is founded on the postulate that the conveyance of a fee is a conveyance of the whole estate, that the right of alienation is an inherent and inseparable quality of an estate in fee simple, and that, therefore, a condition against alienation is repugnant to, and inconsistent with, the estate conveyed. To transfer a fee and at the same time restrain the free alienation of it is to say that a party can grant and not grant, in the same breath. But the rule is not founded exclusively on this principle of natural law. It rests also on grounds of clear public policy and convenience in facilitating the exchange of property, in simplifying its ownership and in freeing it from embarrassments which are injurious not only to the possessor, but to the public at large.

In the deed in question here, the restraint upon alienation is not absolute, either as to persons or time. As to persons, it is partial; as to time, it is temporary. The restraint, as to persons, is limited to three classes, namely, persons of African, Chinese, and Japanese descent. As to time or duration, the restraint is limited to a little over fourteen years, or until January 1, 1925.

The decisions respecting the validity of a restraint that is only partial as to persons or temporary as to time are in a state of conflict and hopeless confusion. Some, particularly the Kentucky cases, which admittedly are against the weight of authority (*Bonnell* v. *McLaughlin,* 173 Cal. 216 [159 Pac. 590]), hold that if the restraint be total as to persons but only temporary as to the time of its duration, and the time is not unreasonable, the condition is valid. (*Lawson* v. *Lightfoot,* 27 Ky. Law Rep. 217, [84 S. W. 739].) Others hold that if the restraint be total as to persons but temporary as to time, the condition is utterly void, no matter how short the time may be. (*Mandlebaum* v. *McDonnell,* 29 Mich. 78, [18 Am. Rep. 61]; *Latimer* v. *Waddell,* 119 N. C. 370, [3 L. R. A. (N. S.) 668, and note, 26 S. E. 122]; *O'Connor* v. *Thetford* (Tex. Civ. App.), 174 S. W. 680.) And there are other cases that hold that if the restraint be partial as to persons, and the restricted class is so large that the restraint is unreasonable, the condition is void. (*Manierre* v. *Welling,* 32 R. I. 104, [Ann. Cas. 1912C, 1311, 78 Atl. 507].) Still others hold, or seem to hold, that any restraint whatever as to persons, however partial, is void. (*Barnard's Lessee* v. *Bailey,* 2 Harr. (Del.) 56; *Williams* v. *Jones,* 2 Swan (Tenn.), 620. See, also, *Bradford* v. *Leake,* 124 Tenn. 312, [Ann. Cas. 1912D, 1140, 137 S. W. 96].)

[3] We think that, on principle, any restraint on alienation, either as to persons or time, is invalid. And while there is no case in this state directly in point—or at least none to which our attention has been called—there is one case in which the supreme court says, though by way of *dictum,* that any restraint whatever is void. (*Murray* v. *Green,* 64 Cal. 367, 368, [28 Pac. 118].)

In all, or almost all, of the cases in which it is held that a condition restraining alienation for any time, however short, is void, the restraint was total as to persons, though but partial or temporary as to time. We think, however, that the reasoning whereby those courts reach the conclusion that a condition is void that imposes a total restraint upon the power of alienation for any time, however short, applies with equal force to a condition that imposes a restraint that is but partial as to the persons or classes of persons to whom the title may not be conveyed, and that

the reasoning in those cases leads logically and inevitably to the conclusion that any restraint whatever on alienation, either as to persons or time, is void. In *O'Connor* v. *Thetford, supra,* the Texas court of civil appeals, speaking of the generally accepted doctrine that the suspension of the power of alienation for any time, however short, is void, says that it "is the more logical and presents no difficulties such as may be encountered in determining what is a reasonable time." In *Mandlebaum* v. *McDonnell,* 29 Mich. 78, [18 Am. Rep. 61], the court, speaking of the same rule, propounds these pertinent questions: "Who can say whether the time is reasonable, until the question has been settled in the court of last resort; and upon what standard of certainty can the court decide it? Or depending, as it must, upon all the peculiar facts and circumstances of each particular case, is the question to be submitted to a jury?" These questions are equally pertinent when propounded with respect to a restraint on alienation that is partial as to persons.

There are two English cases—*Doe* v. *Pearson,* 6 East, 173, and *In re Macleay,* L. R. 20 Eq. 186—that lend some support to the doctrine that if the restraint on alienation be not total as to persons, the condition is valid. The authoritative force of those cases, however, was considerably shaken by the decision in the later case of *Atwater* v. *Atwater,* 18 Beav. 330. For an elaborate and learned discussion of the question, see *Manierre* v. *Welling,* 32 R. I. 104, [Ann. Cas. 1912C, 1311, 78 Atl. 507], where, however, the restraint was so general and so nearly absolute in character as to amount to practically a total inhibition on the power of alienation.

If, as is held by the majority of the cases, supported by principle and reason, a condition is void that imposes a total restraint on the power of alienation for any time, however short, then why should not a condition be void that imposes any inhibition on alienation to persons, however few, or to classes of persons, however limited the classes may be? Upon what principle can a restraint partial as to persons and a restraint partial as to time be put upon different bases? In one case, as in the other, the rule that any limitation, however partial, voids the condition, is the more logical, and presents no difficulties such as necessarily must be encountered in

determining whether the restriction be reasonable or otherwise. The right of alienation is an inherent and inseparable quality of an estate in fee simple. (*Potter* v. *Couch*, 141 U. S. 315, [35 L. Ed. 721, 11 Sup. Ct. Rep. 1005, see, also, Rose's U. S. Notes].) Therefore, any and all restraints on alienation necessarily must tend to deprive the granted estate of an incident inseparably inherent in it, and necessarily must be repugnant to and inconsistent with the grant, and, as such, void. "The general rule is that, where a devise is made in fee, either of a legal or an equitable interest, all limitations tending to deprive the estate of any of the incidents appertaining to the interest created are held to be repugnant to the devise, and void. To transfer a fee, and at the same time to restrict the free alienation of it, is to say that a party can give and not give, in the same breath." (*Johnson* v. *Preston*, 226 Ill. 447, [10 L. R. A. (N. S.) 564, 80 N. E. 1001].)

If the continuation of the estate in the grantee may be made to depend upon his not selling or leasing to persons of African, Chinese, or Japanese descent, it may be made to depend upon his not selling or leasing to persons of Caucasian descent, or to any but albinos from the heart of Africa or blond Eskimos. It is impossible, on any known principle, to say that a condition not to sell to any of a very large class of persons, such as those embraced within the category of descendants from African, Chinese, or Japanese ancestors, shall not be deemed an unreasonable restraint upon alienation, but that the proscribed class may be so enlarged that finally the restriction becomes unreasonable and void. Where shall the dividing line be placed? What omniscience shall tell us when the restraint passes from reasonableness to unreasonableness? Who can know whether he has title to the land until the question of reasonableness has been passed upon by the court of last resort? No matter how large or how partial and infinitesimal the restraint may be, the principles of natural right, the reasons of public policy, and that principle of the common law which forbids restraints upon the disposition of one's own property, are as effectually overthrown by the one as by the other. The difference is of degree, not principle.

Though there is no case in this state to which our attention has been called that is directly in point, we think

the reasoning of the California cases leads necessarily to
the conclusion that a condition against alienation such as
we have presented to us in this case is void. (See *Murray* v. *Green,* 64 Cal. 367, 368, [28 Pac. 118]; *Maynard* v. *Polhemus,* 74 Cal. 141; [15 Pac. 451]; *Prey* v. *Stanley,* 110 Cal. 423, [42 Pac. 908], and *Bonnell* v. *McLaughlin,* 173 Cal. 216, [159 Pac. 590].) In *Murray* v. *Green* the court expressly declares against the doctrine that any partial restraint on alienation may be valid, saying: "But it is claimed that while a general restraint upon alienation is bad, a partial restraint is valid. But is it not obvious that in case of a grant in fee simple, where there is no possibility of reverter, any restraint whatever on the power of alienation would be repugnant to the interest created by the grant? In commenting upon the clause in which Littleton says: 'But if the condition be such that the foeffee shall not alien to such a one, naming his name, or to any of his heirs, or of the issue of such a one, etc., or the like, which conditions do not take away all power of alienation from the feoffee, etc., there such condition is good,' Chancellor Kent says: 'But this falls within the general principle, and it may be very questionable whether such a condition would be good at this day.' (4 Kent's Commentaries, 131.)"

The counsel who has appeared as *amicus curiae* has filed a brief in support of the validity of the condition against selling to persons of African descent, and has cited, among other cases, *Cowell* v. *Colorado Springs Co.,* 100 U. S. 55, [25 L. Ed. 547, see, also, Rose's U. S. notes]. In that case it was held that a condition in a deed that intoxicating liquors shall not be manufactured or sold on the granted premises, and that if the condition be broken the title shall revert to the grantor, is not repugnant to the estate granted, and the condition is not invalid. There the condition in the deed made no attempt directly to restrict the power of alienation, but only placed a restriction upon *use* of the premises, not upon alienation. There is a clear distinction between a restriction on *use* of the premises by the grantee in a deed conveying the fee, imposed by a condition or covenant whereby reasonable building restrictions are created, and a direct restraint on *alienation.* It is true, a restriction upon use may narrow the

42 Cal. App.—11

circle of possible purchasers. Whether it does or not is, in most cases, largely a matter of speculation. Certain it is that a restriction upon use only is not within the letter or spirit of section 711 of the Civil Code, or of the common-law doctrine of which that section is a codification. "Restrictions against particular use of particular parcels of land do not restrict the alienation, for the owner of the fee can convey it at his pleasure; and they do not tend to perpetuity, for the person who is entitled to the rights or privileges created or secured by the restrictions can at any time release them." (8 R. C. L., p. 1116.)

Counsel for appellant relies confidently upon the case of *Firth* v. *Marovich,* 160 Cal. 257, [Ann. Cas. 1912D, 1190, 116 Pac. 729]. That was a case involving the breach of a building restriction affecting the use of the land by the grantee and his assignees. Speaking of this restriction, the court said: ". . . it is not repugnant to the granting clause, nor does it come within the terms of the code section prohibiting or limiting restraints on alienation"; also: "The power of alienation is not restrained." There can be no doubt that "the power of alienation is not restrained" by a restriction upon use. It doubtless is true that a restraint upon use is inconsistent with ownership in fee simple absolute. And it is probable that one of the reasons that gave rise to the rule now embodied in section 711 of the Civil Code, namely, that the grantor cannot both give and not give—cannot grant the fee and still retain an essential incident to title in fee—is as applicable to a restriction upon use as to a restraint on alienation. But even so, there is another reason that lies back of the rule respecting restraint on alienation that is not applicable to reasonable restraints upon use, and that is that, ever since the statute *quia emptores,* courts and legislatures, in the interest of the public, have sought to strike the old feudal fetters from the power of alienation. The rule of the common law against restraints on alienation is based on considerations of great public convenience and policy as much as upon the natural law that a man cannot both give and not give. The only safe rule is to hold that a condition that restrains the power of alienation to any extent whatever, either as to persons or time, is inconsistent with the estate granted, as, indeed, it necessarily must be if the

estate granted be title in fee simple absolute, and if, as all must admit, the power of alienation is an inseparable incident to, and a necessary concomitant of, ownership. Chancellor Kent says: "It [a fee simple] is an estate of perpetuity, and confers an *unlimited* power of alienation, and no person is capable of having a greater estate or interest in land. *Every* restraint upon alienation is inconsistent with the nature of a fee simple; and if a partial restraint be annexed to a fee, as a condition not to alien for a limited time, *or not to a particular person*, it ceases to be a fee simple, and becomes a fee subject to a condition." (4 Kent's Commentaries, p. 5. The italics are ours.) We cannot resist the conclusion that, by the positive, unqualified, and uncompromising language of section 711 of our code, the legislature intended that the rule in this state should be the definite and unequivocal rule so emphatically stated by Chancellor Kent. It is the more logical rule, and presents no difficulties such as must be encountered in determining when a restraint on alienation, partial as to the persons, passes out of the wide, uncharted, crepuscular region that lies between unquestionable reasonableness and unreasonableness.

Notwithstanding the obvious distinction between a restriction upon use, as in the case of a building restriction, for example, and a direct restraint upon the power of alienation, as in the present case, we find Mr. Justice Field, in *Cowell* v. *Colorado Springs Co.*, 100 U. S. 55, [25 L. Ed. 547, see, also, Rose's U. S. Notes], after saying that "the owner of property has a right to dispose of it with a limited restriction on its use," giving expression to this *dictum:* "Repugnant conditions are those which tend to the utter subversion of the estate, such as prohibit entirely the alienation or use of the property. Conditions which prohibit its alienation to particular persons or for a limited period, or its subjection to particular uses, are not subversive of the estate; they do not destroy or limit its alienable or inheritable character." What Mr. Justice Field said to the effect that restraints upon *use* do not tend to the subversion of the estate granted, was pertinent to the facts of that case and a correct statement of the law. What that learned jurist said about restraint upon *alienation* was *dictum,* pure and simple, and not in accord

with the weight of authority nor the better reasoned cases. That that part of the excerpt from the opinion of Mr. Justice Field wherein he animadverts on restraints upon alienation is *dictum,* the federal supreme court itself has declared in the subsequent case of *Potter* v. *Couch,* 141 U. S. 315, [35 L. Ed. 721, 11 Sup. Ct. Rep. 1005, see, also, Rose's U. S. Notes].

Turning now to the two cases that are the most nearly identical with the facts of this case—*Queensborough Land Co.* v. *Cazeaux,* 136 La. 724, [Ann. Cas. 1916D, 1248, L. R. A. 1916B, 1201, 67 South. 641], and *Koehler* v. *Rowland,* 275 Mo. 573, [205 S. W. 217] : Each of these cases supports appellant's position. With neither of them, however, do we agree. The Louisiana case was decided in accordance with the principles of the civil law, and can throw but little, if any, light upon the construction of our code provision, based, as it is, on the common law of England—a body of law that, ever since the statute *quia emptores,* has more and more treated land as an article of sale and traffic, as much so as personal property. In the Missouri case, the court, in one brief paragraph, disposes of this difficult question out of hand, citing but one case, *Cowell* v. *Colorado Springs Co., supra,* to sustain its statement that "it is entirely within the right and power of the grantor to impose a condition or restraint upon the power of alienation in certain cases to certain persons, or for a certain time, or for certain purposes." In short, the Missouri court's decision is based upon a *dictum* of Mr. Justice Field—a *dictum* by one of the country's most learned jurists, it is true, but a *dictum,* nevertheless, which, in so far as it refers to a time limitation upon alienation, is contrary to all the best reasoned cases, such as *Mandlebaum* v. *McDonnell,* 29 Mich. 78, [18 Am. Rep. 61], and, in so far as it refers to restraints that are partial as to persons or classes of persons, is, we believe, contrary to logic and contrary to the clear implication of the supreme court of this state in *Murray* v. *Green,* 64 Cal. 367, 368, [28 Pac. 118] that any restraint whatever upon the power of alienation, however partial or temporary, or of whatever character, is violative of section 711 of our Civil Code; and, furthermore, it is *dictum* that is pregnant with uncertainties that necessarily would produce the greatest in-

convenience in the world of trade and commerce, for no one could say whether any particular restriction was reasonable until the question had been litigated to the court of last resort, and no judge could know what standard of certainty should be employed to determine the question.

For these reasons we hold that the condition against alienation in the grant from appellant to respondent's predecessor, Pauline Kasanofska, is a condition repugnant to the fee-simple estate created by the granting clause of the deed, and is void.

[4] We have treated the clause against leasing or selling to persons of African descent as a condition subsequent. Whether it be regarded as a condition subsequent or as a limitation over—a limitation conditioned upon the lease or sale of the premises to persons of the proscribed class—or as a covenant running with the land, as the deed itself declares it to be, the result must be the same. If it is a condition, it is void for the reasons already given. If it is a conditional limitation, it is equally within the condemnation of the common law and code section 711. (*Potter* v. *Couch, supra; Diamond* v. *Rotan,* 58 Tex. Civ. App. 263, [124 S. W. 196] ; *O'Connor* v. *Thetford* (Tex. Civ.), 174 S. W. 680.) If the language of the deed be construed as creating a covenant, it is equally void, for the rule respecting restraints on alienation does not depend upon the mere form whereby the restraint is imposed. "It avoids, as well, covenants of the grantee against alienation as conditions of like nature imposed by the grantor." (*Prey* v. *Stanley,* 110 Cal. 423, [42 Pac. 908].)

Judgment affirmed.

Sloane, J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 8, 1919.

All the Justices concurred.