WILLIAM F. NEAR v. HENRY J. DONNELLY.

*Contract—Stock subscription—Equitable lien.*

Complainant and nine others agreed to pay to defendant the sums set opposite their respective names as and for stock in a hotel building, which he agreed to erect, they to take as payment an interest and ownership in the building equal to the amount so paid. Defendant agreed to keep an itemized account of the cost of the building, and to exhibit it to the stockholders, on its completion, to enable them to ascertain the proportionate interest of each therein. The stockholders further agreed that, if on such completion defendant would furnish the building in a proper manner for a hotel, he should have its use as long as he kept it as a hotel, by paying to them 7 per cent. interest on the amount of their several subscriptions, all of which defendant agreed to do. Defendant erected the building and furnished it, and opened a hotel, and most of the stockholders paid their subscriptions. Defendant kept an account of the expense of construction for a time, and then ceased doing so, and claims to have lost the figures so kept, but testifies that the building cost between $9,000 and $10,000. No account of the cost was ever rendered, and no stock company was ever formed or stock issued.

In construing the agreement the Court held:

*a*—That it was the intention of the parties that upon the completion of the building its entire cost would stand for the capital invested, which was to be represented by stock, and each subscriber should have his share of the stock in proportion to the sum invested by each, which stock should represent an interest in real estate, and the money be permanently invested so long as defendant continued to keep the hotel.

*b*—That equity will look upon that as done which the parties intended should have been done, and the Court will treat the stock subscribed as having been issued, and as representing an interest in the hotel building equal in extent to its proportion to the whole sum invested in the building.

*c*—That the intention was that the stock should not be assigned to outside parties, but, if it had been intended to be *absolutely* non-transferable, the defendant, by acquiescing in the assignments to complainant, and paying him interest thereon, has waived such condition.

*d*—That the stock was secured by an equitable lien upon the real estate represented by it, and that payment of accrued interest is enforcible by a foreclosure in equity, but that payment of the principal of the subscriptions cannot be enforced so long as defendant keeps the hotel as such.

*e*—That, in order to ascertain the extent of the interest represented by the stock held by the owners of the stock subscriptions, there must be an accounting as to the cost of the building, and, as defendant has failed to keep an account of the same, proofs may be taken of what it was worth to build and complete it, and upon the coming in of the commissioner's report a decree of foreclosure may be entered subjecting that undivided interest in the hotel building, including the land covered by it, which is represented by the stock subscriptions *paid in*, to a sale to satisfy the interest due and unpaid, and the surplus, if any, to be paid over *pro rata* to the owners of the *paid up* subscriptions.

Appeal from Ingham. (Smith, J., presiding.) Argued January 24, 1890. Decided April 11, 1890.

Bill for an accounting, etc. Defendant appeals. Reversed, and decree entered in accordance with opinion, in which the facts are stated.

*George F. Day* (*Cahill & Ostrander*, of counsel), for complainant, contended:

1. The relation of debtor and creditor existed between the parties, and the demands of the several subscribers could be assigned to complainant; citing How. Stat. § 7344; *Cook v. Bell*, 18 Mich. 337; *Briggs v. Hannowald*, 35 Id. 474.

2. Every express executory written agreement whereby the parties sufficiently indicate an intention to make some particular property security for a debt or obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon such property; citing 3 Pom. Eq. Jur. § 1235; *Haverly v. Becker*, 4 Comstock, 169; and any written instrument intended as security for the payment of money advanced is in equity a mortgage; citing 3 Wait, Act. & Def. 145.

3. Equity will consider that done which ought to have been done, and treat the subject-matter, as to collateral consequences and incidents, as if the final acts of the parties had been executed

exactly as they should have been; citing 1 Story, Eq. Jur. §
64g.

4. If complainant is entitled to the lien claimed, it should cover so
   much of the land as is commonly used with the hotel and as
   is appurtenant to it,—within the curtilage; citing 4 Wait, Act.
   & Def. 539; *Greenwood v. Murdock*, 9 Gray, 20; *Cheshire v.
   Shutesbury*, 7 Metc. 566; *Forbush v. Lombard*, 13 Id. 109.

   *Q. A. Smith*, for defendant, contended:

1. All that defendant ever agreed to do was to build and keep the
   hotel, and pay the subscribers interest on their stock as long
   as they owned it, which stock was unassignable.

2. Defendant never agreed to pay any of the principal money, and
   therefore the theory of enforcing the arrangement as an equit-
   able lien upon the property falls to the ground. Equitable
   liens cannot exist without a precedent agreement for security;
   citing 1 Jones, Mort. § 168; 1 Thomas, Mort. (2nd ed.) § 41.

3. A contract ought to be clear, explicit, and definite, and capable
   of complete enforcement and performance, and clearly and
   satisfactorily proven, before a court of equity can be invoked
   to carry it into effect; citing *Wilson v. Wilson*, 6 Mich. 9;
   *Brown v. Brown*, 47 Id. 378; *Eccard v. Brush*, 48 Id. 3; *Peck-
   ham v. Balch*, 49 Id. 179.

4. The only equitable relief complainant is entitled to, if any, is an
   accounting as to the cost of the building, and to have his
   interest therein apportioned and set apart to him.

CHAMPLIN, C. J. The complainant asks that an account
be taken respecting the amount due to him under the
instrument hereinafter set forth, and that his rights and
equities in the hotel, and land upon which the same is
built, may be ascertained and declared by the decree of
the court, and that he may be decreed to have an interest
in and a lien upon the hotel and land as security for the
payment of the amount found due, together with the
unpaid interest thereon, and that defendant be decreed
to pay the same by a day fixed, and in default the usual
decree for foreclosure and sale. Below is a copy of the
agreement referred to:

" We, the undersigned, in consideration of the cove-
nants and agreements hereinafter contained, agree by and

with H. J. Donnelly to take stock to the amount set opposite to each of our names in a hotel building, as hereinafter described and located, on condition that the said Donnelly shall build on the north-west corner of Maple street and State road, in the village of Mason, Ingham county, a brick hotel three stories high, and of the following dimensions, viz.: 80 feet on Maple street, 60 feet on State road, 20 feet on east front between Maple street and State road, 29 feet on north side, and 60 feet on west end; the same to be inclosed by the first day of January, 1870, and finished as soon thereafter as can be conveniently done. We will pay to the said Donnelly, at the time and in the manner hereinafter designated, the sum set opposite our respective names as and for stock in said building, and will take in pay an interest and ownership in said building to the amount so paid, and on the further condition that said H. J. Donnelly shall keep a true and just account, properly itemized, of the cost and expense of building said hotel, that to the end that they may be enabled to ascertain the proportion of each in said building, and shall exhibit the same at completion of said building to them.

"And we further agree that, if on the completion of said building the said Donnelly will furnish the same in a proper manner for a hotel, he, the said Donnelly, may have the rent and use of said building so long as he will keep the same as a hotel, by paying to each of us interest upon the sum invested by us at 7 per cent. per annum, to commence from the time it is paid in. The same to be paid by us as follows, viz.: One-half when the basement walls of said ·hotel are complete, and the balance when the building is inclosed ready for use. And we agree to sell to said Donnelly our interest in the same at any time when he will pay us the amount invested, with accrued interest.

"Dated June 30, 1869.

| NAMES. | | |
|---|---|---|
| J. L. Isherwood | $ 500 | 00 |
| William F. Near | 500 | 00 |
| G. G. Mead | 200 | 00 |
| J. L. Wheeler, in brick and labor | 500 | 00 |
| John E. Spencer | 500 | 00 |
| K. J. Wilson, to be paid in tin and sheet-iron work | 50 | 00 |
| E. Stanton | 300 | 00 |
| W. A. Teel | 150 | 00 |

| A. O. Millspaugh | $100 00 |
|---|---|
| E. A. Barnes | 50 00 |
| | $2,850 00 |

"And I, H. J. Donnelly, in consideration of the foregoing, agree to build said hotel as above described, and on its completion to furnish and keep the same as a hotel, and to pay to each of the men who take stock as above the sum of 7 per cent. per annum upon the amount invested by each at the time above mentioned, so long as they shall continue to own the same.

"June 30, 1869. H. J. DONNELLY."

The proofs show that Mr. Donnelly went on and built the hotel on the land, and had it so far completed that he opened it for business on February 22, 1870. They further show that all of the subscribers to the agreement paid their subscriptions, except the two last named, who have entirely failed to pay.

Afterwards, and on the days the instruments bear date, complainant, Near, purchased, at 70 cents on the dollar, and had assigned to him, the subscriptions, as follows:

"This indenture, made this 8th day of December, A. D. 1870, witnesseth that, for a valuable consideration to me in hand paid by William F. Near, I have sold, and hereby convey, sell, and set over, to him, his heirs and assigns, 10 shares of stock in the Donnelly House, situated in the village of Mason, county of Ingham, State of Michigan, same being my interest in said house, and said shares of stock were $50 each, making the sum of $500 actually paid and invested towards the erection of said house by me.

"In witness whereof I have hereunto set my hand the day and year above written. JEROME L. WHEELER.

"Witnessed by P. LOWE."

"This indenture, made and executed this 8th day of December, A. D. 1870, witnesseth that, in and for a valuable consideration to me in hand paid by William F. Near, I have sold, bargained, conveyed, and by these presents do hereby bargain, sell, convey, and set over, to him, said William F. Near, his heirs and assigns, four shares of stock in the Donnelly House, situated in the

village of Mason, county of Ingham, State of Michigan, the same being my interest in said house, and shares of stock were $50 each, making a sum of $200 actually paid and invested towards the erection of said house by me.

" In witness whereof I have hereunto set my hand and seal the day hereinabove written.

"GEO. G. MEADE. [SEAL.]"

" This indenture witnesseth that, for a valuable consideration to me in hand paid by William F. Near, I have bargained, sold, and conveyed, and by these presents I do bargain, sell, and convey, to said William F. Near, his heirs and assigns, 6 shares of stock in the Donnelly House, situated in the village of Mason, the same being my interest in said house, and such shares are $50 each, making the sum of $300 actually paid and invested towards the erection of said house by me.

" In witness whereof I have hereunto set my hand and seal the 21st day of January, 1871.

"EDWIN STANTON."

" This indenture witnesseth that, for a valuable consideration to me in hand paid by William F. Near, I have sold, and hereby convey, sell, and set over, to him, ten shares of stock in the Donnelly House, situated in the village of Mason, Ingham county, Michigan, the same being my interest in said house, and such shares of stock given for $300 actually paid and invested towards the erection of said house by me.

" In witness whereof I have hereunto set my hand this 18th day of May, 1870.

"JOHN L. ISHERWOOD."

"MASON, June 15, 1872.

"For value received I hereby sell, assign, and convey to W. F. Near all my right, title, and interest in and about the property in Mason known as the 'Donnelly House,' and my stock in the same.

" Witness my hand the day above written.

"J. E. SPENCER. [Seal.]"

"MASON, June 15, 1872.

"Know all men by these, that I, J. E. Spencer, do sell my interest in the Donnelly House to W. F. Near.

"J. E. SPENCER."

Defendant paid complainant the interest down to April, 1886. He has not paid any since. He kept account of

the cost of building for a time, but discontinued it before the building was completed, and says he has lost the figures he did keep for a time, but testifies that it cost between nine and ten thousand dollars. No account of the cost was ever rendered, and no stock was ever issued. No stock company was ever formed; the paper set out above being the only one ever signed by the parties.

We are asked to construe this contract so that Mr. Donnelly shall occupy the relation of a debtor to the subscribers to the amount of their subscriptions, and further to say that it was the agreement that the subscribers should have an equitable lien for the repayment to them of the amount of the subscriptions. We must ascertain the intention of the parties from the written instrument. The language is:

"We agree to take stock to the amount set opposite to each of our names in a hotel building."

"We will pay to the said Donnelly, at the time and in the manner hereinafter designated, the sum set opposite our respective names *as and for stock in said building,* and will take in pay an interest and ownership in said building to the amount so paid. * * * And we agree to sell to said Donnelly our interest in the same at any time when he will pay us the amount invested, with accrued interest."

"And I, H. J. Donnelly, agree * * * to pay to each of the men who take stock as above the sum of seven per cent. per annum upon the amount invested by each at the time above mentioned."

From these clauses in the contract, construed in connection with others, I think it clearly appears to have been the intention of the parties that upon the completion of the building its entire cost would stand for the capital invested, which was to be represented by stock, and each should have his share of the stock in proportion to the sum invested by each; that this stock should

represent an interest in real estate, and the money was permanently invested so long as Donnelly should continue to keep the same as a hotel. This view is sustained by the language made use of in the assignments, made, some of them, before the building was completed and opened, and before any dispute had arisen. There are three of these which mention the shares as being $50, and the amount subscribed as stock.

Equity will look upon that as done which the parties intended should have been done. We must look upon the stock subscribed as having been issued, and as representing an interest in the hotel building equal in extent to its proportion to the whole sum invested in the building. Donnelly, in lieu of rent, agreed to pay each stockholder 7 per cent. interest on the amount of his stock so long as he kept the hotel, and—

"So long as they should continue to own the same."

It is claimed that this last clause renders the stock unassignable, or, at least, if assigned, Donnelly is no longer obliged to pay interest. I think the intention was that the stock should not be assigned to outside parties. The stock representing interest in the hotel building, it can readily be seen that Donnelly would object to third parties or strangers becoming owners of such interest, and he protected himself by this clause. The reasons do not apply to one stockholder buying the stock of another stockholder, and, if it did, it must be held that by recognizing the assignment for so long a time, and paying interest to Near without objection on that score, he waived that clause of his contract, if it was designed absolutely to prevent any transfer.

From the nature of the transaction, I think the stock was secured by an equitable lien upon the real estate represented by it, and that payment of the interest due and

unpaid can be enforced by a foreclosure in equity. The face amount of the stock is not due, and Donnelly cannot be forced to pay such subscription so long as he keeps the hotel as such. Whether he can ever be compelled to repay the face of the subscriptions is not now before us, and we express no opinion upon it. In order to ascertain the extent of the interest represented by the stock held by the owners of the stock subscriptions, there must be an accounting as to the cost of the building, which has not been done. If Mr. Donnelly has failed to keep an itemized account, proofs may be taken of what it was worth to build and complete it; and upon the coming in of the commissioners' report a decree of foreclosure may be entered subjecting that undivided interest in the hotel building, including the land covered by it, which is represented by the stock subscriptions paid in, to a sale to satisfy the interest due and unpaid. The surplus, if any, will be paid over to the owners of the subscriptions paid in, *pro rata*.

The decree must be reversed, and a decree entered in accordance with this opinion, and the record remanded to the court below for further proceedings in pursuance of the decree. The defendant will recover his costs of this Court.

Morse and Grant, JJ., concurred. Long, J., did not sit.