[L. A. No. 5926. In Bank.—June 3, 1921.]

## C. E. MILLER, Respondent, v. LERDO LAND COMPANY, Appellant.

[1] BROKERS—EXCLUSIVE SELLING AGENCY OF LAND—ONE-THIRD OF SELLING PRICE AS COMPENSATION—CONSTRUCTION OF CONTRACT— ABSENCE OF EXPRESS TRUST.—A written agreement constituting a broker the exclusive selling agent of a tract of land and providing that he shall receive one-third of the selling price as compensation for his services, which shall be paid at the times and in the manner and according to the same terms as the remaining two-thirds without deduction on account of any encumbrance by the owner, does not create an express trust in the land in favor of the broker, but merely confers upon him a right to one-third of the proceeds when the land is sold, and a judgment directing the sale of the land within a stated time and payment of one-third of the proceeds of the sale to the broker, imposes terms not within the purview of the agreement.

APPEAL from a judgment of the Superior Court of Kern County. Milton T. Farmer, Judge. Reversed.

The facts are stated in the opinion of the court.

Anderson & Borton for Appellant.

Nathan Newby for Respondent.

LENNON, J.—This is an appeal from a judgment in an action to quiet title to and declare a trust in certain lands situated in Kern County, California. We quote and adopt the following statement of facts from the opinion rendered

in this case by the district court of appeal and written by Mr. Justice Knight:

"This is an appeal by the defendant, Lerdo Land Company, a corporation, from a judgment in which it was decreed that said Lerdo Land Company holds legal title to 1,390.08 acres of land situate in Kern County in trust for the purpose of selling the same and accounting to plaintiff for one-third of the gross selling price of any and all of said lands until finally disposed of. Said judgment further decreed that said land be sold by said Lerdo Land Company within six months from the date of the entry of judgment, at the rate of $150 per acre, unless plaintiff consents in writing to a sale for a less sum, and in the event of a failure on the part of said Lerdo Land Company to sell such land within that period that it be sold by a receiver (who was named in the decree) at public or private sale, for the highest price obtainable, for cash or on time, subject to the confirmation of the court, and that from the proceeds of said sale the costs shall first be deducted, and the balance divided, one-third to the plaintiff and two-thirds to the defendant.

"The controversy arises over two written agreements between the parties, the first of which is dated October 2, 1912, and the second, which is supplemental to the first, is dated May 29, 1913. The first agreement is quite elaborate and comprehensive, and it will therefore necessitate paraphrasing or merely stating the substance of many of its provisions.

"By its terms respondent was given the exclusive right to sell, within three years, 6,481.03 acres of land situate in Kern County belonging to appellant, providing one thousand five hundred acres or more were sold by the end of the first year, and four thousand acres by the end of the second year. The land was to be sold in tracts of ten acres or more, except lots in town sites. The sale price was to be $150 or more per acre. If the land sold for $150 per acre respondent was to receive one-third and appellants two-thirds of the selling price, and if it sold for more than $150 per acre the surplus was to be equally divided. The town site lots were to be sold under a special arrangement, which it is not necessary to mention here in detail. Provision was also made for selling on deferred payments, in which event

a special arrangement was made for the time when respondent should receive his *pro rata*. It was also provided that respondent should enter immediately upon a selling campaign, and that during the life of the contract he should not engage in the business of selling any other land subdivision without appellant's written consent.

"Appellant agreed to commence and to continue with the development of water wells on the property sold, and as the property was developed to equip said wells with casings, pumps, motors, etc., in order to supply the land sold with water for irrigation. It was provided that a certain quantity of water should be supplied for each 160 acres of land. Said agreement also contained the following provision: 'Provided always, however, that if it shall be ascertained and determined by the first party (Lerdo Land Company) in the drilling of wells upon any portion of the lands that water cannot be discovered, produced and developed for the irrigation of the same in adequate quantities, and at reasonable cost, then and in that event, the first party shall in writing notify the party of the second part to that effect, and shall describe the lands upon which it has been ascertained and determined that it is not practicable to develop and deliver water in adequate quantities and at such reasonable cost, and such lands so described in such notice shall thereupon be removed from the terms of this agreement, and shall cease to be affected hereby or included herein.' Provision was also made for an extension of the time to sell the land if the sales were retarded by the failure to develop water.

"On May 29, 1913, a supplemental agreement was entered into, by the terms of which it was provided: 'Whereas, the parties hereto did on the 2d day of October, 1912, enter into a certain indenture of agreement whereby the party of the second part was constituted the agent of the party of the first part for the purpose of selling its lands known as the "Lerdo Lands," consisting of about seven thousand (7000) acres in the county of Kern, state of California, for the consideration and upon the conditions therein expressed, a copy of which said agreement is hereby referred to and made a part hereof; and

" 'Whereas said agreement provided among other things that the parties thereto might mutually agree to except

and release from said agreement any of said lands included therein, should it be determined that it would not be profitable to develop water upon said lands or sell the same;

" 'Now, therefore, this agreement is to witness that the parties hereby mutually agree that the following described lands shall be withdrawn from the operation of said agreement. [Here follows the description of the land.]

" 'It is further understood and agreed that in consideration of the withdrawal of said lands, and of the waiver by the party of the second part of his commissions as provided in said indenture of agreement, that the party of the second part shall be entitled to the equal one-third of the selling price of any and all of said lands hereinabove described, to be paid at the times and in the manner and according to the terms of sale of the remaining two-thirds interest in said lands or any thereof at whatever date said lands or any thereof shall or may be sold, without deduction on account of any mortgage or other lien or incumbrance made, done or suffered by the party of the first part, its successors, agents or assigns; provided, however, that said lands shall not be sold at less than $150 per acre except with the consent of the party of the second part in writing first had and obtained.'

"The supplemental agreement was dated and signed in duplicate by respondent on May 29, 1913, and transmitted by him to the president of the appellant company. On September 26, 1913, one of the duplicates was returned to respondent, duly signed by appellant, and the other duplicate was retained by appellant.

"It was the finding of the court that the supplemental agreement of May 29, 1913, was obtained from the respondent through the representations of the president and secretary, respectively, of the appellant company, to the effect that 'in order to relieve the defendant from the obligation to develop water for the irrigation of certain portions of the Lerdo Tract, the said defendant desired to withdraw, by mutual consent of the plaintiff and defendant, portions of said Lerdo Tract described in the sales contract dated October 2, 1912, from the operation of said contract,' and that it was further represented to respondent, 'That so much of the purchase money that might be received from the sale of said land to be withdrawn as would be necessary would be

used for the development of the remainder of said Lerdo
Tract, by the installation of an efficient irrigation system,
and that, unless sold as oil land, said development would
have to be postponed indefinitely.' The court further found,
'That on and after the 29th day of May, 1913, plaintiff
and defendant treated the lands described in said contract
as having been withdrawn from the operation of the sales
contract dated October 2, 1912, and no attempts were made
to sell any of said land for agricultural purposes after May
29, 1913. . . . That defendant never at any time drilled
any wells or attempted to drill any wells upon said land or
to install any irrigation system thereon for the purpose of
irrigating said land solely for the reason that said land
had been withdrawn from sale for agricultural purposes by
said contract dated May 29, 1913.' And the court further
found that the installation of an irrigation system on said
withdrawn land would have cost the defendant a sum in
excess of thirty thousand dollars, of which expense the
defendant was relieved by said contract dated May 29,
1913.

"No sales of the land under the supplemental agreement
of May 29, 1913, were made, and on March 24, 1914,
appellant caused to be served upon respondent a notice to
the effect that said supplemental agreement was not the
corporate act of said Lerdo Land Company, nor was it ever
authorized or approved by it, and therefore, was not
binding upon it. This action was filed by respondent on
April 6, 1915."

[1] We are of the opinion that the decree of the trial
court cannot be sustained, for the reason that neither the
pleadings nor proof justify that portion of the findings and
decree determining that a trust exists in the lands. Re-
spondent's rights under the contract of May 29, 1913, are:
That he shall receive one-third of the selling price of any
and all of the said lands; that this one-third of the selling
price shall be paid to respondent at the times and in the
manner and according to the same terms as the remaining
two-thirds are paid to appellant; that there shall be no
deduction on account of any mortgage or other lien or en-
cumbrance made, done, or suffered by appellant, its suc-
cessors, or assigns. It is apparent from a recital of the
substance of the provisions that the contract conferred upon

respondent nothing more than a right to one-third of the proceeds when the lands are sold. There is a distinction between an interest in the land itself and an interest in the money obtained from the sale of the land. (*Green* v. *Brooks,* 81 Cal. 328, 332, [22 Pac. 849].) In the cases of *Green* v. *Brooks, supra,* and *Hannah* v. *Canty,* 175 Cal. 763, [167 Pac. 373], cited by respondent in support of the theory that a trust exists, the person claiming to be the beneficiary of the trust was, in effect, one of the purchasers of the land in question and had a direct interest therein. The contract relied upon by respondent, however, does not, by any possible construction, purport to pass a present interest in the lands to respondent nor to provide for the holding of the lands or any interest therein for the benefit of respondent, nor is there anything from which any such intention can fairly be inferred. There is, therefore, no express trust, and respondent does not contend that any other kind of trust exists. It is clear from the uncontradicted evidence that the appellant corporation refused to part with any interest in the lands, and it follows that the decree imposes upon the parties terms not within the purview of their agreement in that it compels appellant to sell the lands, although appellant is still the sole owner thereof. The decree creates further rights in favor of respondent by depriving appellant of the right to control the terms of the sale and placing the same in the hands of a receiver despite the fact that the parties contemplated and stipulated that appellant should determine all the conditions of sale, with the single proviso that the price should not fall below $150 per acre.

It is unnecessary to discuss the several other points raised upon the appeal, for the sole object of the action is to declare a trust in the lands. It having been determined that no trust exists, respondent's action necessarily fails.

The judgment is reversed.

Shaw, J., Sloane, J., Olney, J., Angellotti, C. J., Wilbur, J., and Lawlor, J., concurred.