[S. F. No. 12087. In Bank.—September 30, 1929.]

R. McCOLGAN, Appellant, v. THE BANK OF CALIFORNIA ASSOCIATION (a Corporation) et al., Defendants; COOPERATIVE LAND COMPANY (a Corporation), Respondent.

George D. Collins, Jr., Keyes & Erskine and Herbert W. Erskine, for Appellant.

John L. McNab and Byron Coleman for Respondent.

PRESTON, J.—In this case paragraphs 1 to 4, inclusive, of the judgment herein are hereby sustained, and para-

graphs 5 to 7 inclusive, thereof are hereby stricken out and, as so modified, the judgment is affirmed, neither party to recover costs. The effect of this holding is that under the contracts, the subject of this action, the right to terminate them exists, except that, as to advances made for the account of the owner and to him personally, there arose on the revocation of said agency an equitable lien in favor of respondent therefor, which, while not an estate in said property, is nevertheless a charge or lien thereon. We base this conclusion upon the following considerations:

The suit is one to quiet title to about twenty acres of subdivision property located in the town of Mayfield, county of Santa Clara, California. The complaint is in the ordinary form. The answer, in addition to a general denial, sets up possession of the said property in defendant under a certain written agreement dated October 28, 1904; modification thereof dated February 28, 1905, and a supplemental contract dated June 10, 1907, all of which contracts are of record in said Santa Clara County. The nature of said contracts will be referred to hereafter.

Upon these issues the cause went to trial and the court found that plaintiff and respondent both claimed title under one Percy Beamish, who, at all times between 1904 and 1915, was the owner of the property in question; that on March 12, 1912, said Beamish made a conveyance of said property in trust to secure a loan; that on March 22, 1915, pursuant to said deed of trust, a sale of said property was had and title passed from said Beamish to the predecessor in ownership of plaintiff here; that on September 19, 1924, plaintiff here, under a series of mesne conveyances, succeeded to all the rights of the said purchaser under said deed of trust; that after said sale and on March 14, 1916, said Percy Beamish died. The court also found that the said three contracts above referred to were in existence as claimed by respondent and that under said contracts respondent was in possession of said property and pursuant to said contracts had advanced for the account of said Beamish the sum of $3,252.62 as his portion of the carrying charges upon said property, which said sum had accrued interest due thereon to October 1, 1924, in the amount of $1,914.15; that respondent also advanced as a personal loan to said Percy Beamish the sum of $1,916.43, as principal,

and $1,650.29, by way of interest, to said first day of October, 1924. The court further found that respondent was entitled to remain in possession to carry out fully said written contracts and to that end the plaintiff, as successor in interest of said Beamish, was under obligation to co-operate in said matter by executing the necessary conveyances to purchasers of said property.

In accord with these findings the court gave judgment declaring said sums above referred to, to be a lien upon said property and adjudged respondent to have the right to carry into effect and fully perform his obligations under said contracts, and to that end directed that plaintiff co-operate with him by the execution of such deeds and conveyances as might be necessary to comply with the powers conferred by said contracts and that in the event of his failure to do so, a trustee or commissioner be appointed. Plaintiff appealed from so much of said judgment as attempted to confer a lien or rights of any kind or character upon respondent. The rights of other parties as defendants in said action, therefore, need not be considered. A summary of said agreements is necessary to an understanding of the points of law involved.

The contract of October 28, 1904, executed by Beamish, as party of the first part, and respondent, then known as the Cooperative Land & Trust Company, a corporation, as party of the second part, recited the making of the contract in consideration of services rendered and money advanced by the party of the second part; described the property in question and conferred complete and exclusive control thereof upon the party of the second part until all the terms and conditions thereof should be fulfilled and all the affairs in connection therewith finally concluded. The party of the second part was to have the right to lay out streets and avenues, to subdivide said property into lots, to sell same in parts or in any manner it saw fit and the party of the first part ratified and confirmed all acts and deeds done by said party of the second part in respect to said subdivision work; agreed to furnish good and sufficient deeds to any parts or parcels of said land, as suggested by said party of the second part, but said party of the first part was to have control of the selling price of lots subject to certain restrictions, with power to change

it at will. Party of the second part was to receive five per cent commission on the selling price and half the net profits on sales of land above the average price of $300 per acre, interest on deferred payments to be considered profits. No profits, however, were to be divided until party of the first part had received some $6,000, together with taxes advanced, etc., nor until party of the second part should have been reimbursed for money expended in making improvements. It was further provided that the costs of surveying and subdividing said tract, laying out, grading, turnpiking and graveling and other improvements of streets were to be paid by the party of the second part and should become a charge against the land and added to the net selling price of $300 an acre. Taxes were to be paid by the party of the first part and were also to be a charge on the land and added to the net selling price of $10,000. Party of the second part was to bear the expense of advertising and selling said land. The terms of sale on deferred payments were also provided for. Lastly, said contract contained the following clause: "This agreement is coupled with an interest and is only revocable by the consent of the parties hereto; but it is understood that for breach of covenant either party may rescind as provided by law."

The modification of February 28, 1905, is unimportant and merely consisted of an enlargement of the powers of the party of the second part in the fixing of prices and in the execution of contracts of sale of lots in said subdivision. The court found that the item of grading, etc., for which a lien was specifically given in the first contract had been fully paid prior to this action.

The contract of June 10, 1907, however, materially changed the original contract and while it purported to be a part of the original contract, it especially provided that in case of conflict therewith, it should prevail over said original contract. The first change was to give the party of the second part, respondent, full power and control of the selling price and terms of sale of said lots, with power to make, fix or change the price at will, which power was to be absolute. Next, it provided, in effect, that after said party of the first part was paid $6,000 as provided in the original contract, all sums of money received thereafter

from the sale of land should be divided share and share alike between the first and second parties after certain expenses, thereinafter to be provided for, were paid. The right to a commission was abolished. Then it was covenanted that all expenses and costs of surveying and subdividing said tract, laying out, grading, turnpiking and graveling, laying sidewalks, water-pipes and other street improvement, should be paid equally, share and share alike, by the parties.

The fifth clause thereof provided as follows: "It is further provided that the party of the second part shall retain from said one-half the net profits that may become due to the party of the first part from the sale of land sufficient sum or sums to liquidate any claim for money that has been advanced to the party of the first part by the party of the second part." The agreement then closed with this provision: "It is understood by this agreement that it is the intention that it shall be so considered and construed that all the expenses of any kind and nature attending the sale of said tract of land herein described shall be borne equally between the parties hereto, and that thereafter the net profits shall be divided share and share alike between the parties hereto, provided that the share of the net profits belonging to the party of the first part shall be first charged with the mortgage, taxes, and interest, hereinabove mentioned, and also for any money advanced by the party of the second part."

It is the contention of appellant that the above three written agreements, when given their full legal import, do no more than confer a naked agency upon respondent, not coupled with any interest whatsoever in the subject matter. This premise being admitted, the death of Beamish, it is said, terminated the agency. It will be noted, however, that Beamish died approximately one year after he had, by operation of law, lost all interest of every kind and character in the property. Consequently, his death is a false quantity in the matter.

However, it may be admitted that under well-settled rules of law the transfer of the subject matter of an agency would itself revoke the authority of any mere agent. (*Boehm* v. *Spreckels*, 183 Cal. 239, 248 [191 Pac. 5]; Civ. Code, sec. 2355; Mechem on Agency, sec. 698.)

Appellant, urging his position, cites the opinion of Chief Justice Marshall in *Hunt* v. *Rousmanier,* 8 Wheat. (21 U. S.) 174, 203 [5 L. Ed. 589], wherein it is said: "We hold it to be clear, that the interest which can protect a power, after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing. The words themselves would seem to import this meaning. 'A power coupled with an interest' is a power which accompanies, or is connected with, an interest. The power and the interest are united in the same person. But if we are to understand by the word 'interest,' an interest in that which is to be produced by the exercise of the power, then they are never united. The power, to produce the interest, must be exercised, and by its exercise, is extinguished. The power ceases, when the interest commences, and therefore, cannot, in accurate law language, be said to be 'coupled' with it. But the substantial basis of the opinion of the court on this point, is found in the legal reason of the principle. The interest or title in the thing being vested in the person who gives the power, remains in him, unless it be conveyed with the power, and can pass out of him only by a regular act in his own name."

This doctrine, as a general proposition, without doubt obtains to this day and in principle it has been recognized by this court many times. Reference may be had to such cases as *Hicks* v. *Post,* 154 Cal. 22 [96 Pac. 878]; *Miller* v. *Lerdo Land Co.,* 186 Cal. 1 [198 Pac. 778]; *Boehm* v. *Spreckels, supra; Todd* v. *Superior Court,* 181 Cal. 406 [7 A. L. R. 938, 184 Pac. 684].

Under this rule it is asserted that a sale of the property, or the death of Beamish, had he remained the owner, would have terminated the authority of respondent inasmuch as under these contracts nothing more than an agreement of agency was conferred by which Beamish, as owner of the land, gave respondent, in consideration of moneys to be expended and services to be performed by it, the exclusive right to sell the land for a compensation to be measured by the price realized from the sale thereof; that the right to compensation did not attach to the lands but only to an interest in the proceeds arising from the sale thereof in the event that such sale should be made

during the life of the agreement. (*Hicks* v. *Post, supra.*) The soundness of this position is admitted as to the original contract and as to all features of the subsequent contracts, except the ones now to be adverted to.

In the last contract we find inserted therein certain new features, to wit: that the owner without restriction agreed to pay ''equally and share and share alike'' such carrying charges as ''surveying and subdividing said tract and the cost of laying out, grading, turnpiking and graveling, laying sidewalks, water pipes and other improvements of the streets''; that after the owner received $6,000 as provided in the original contract, the money received should be divided equally after payment of the expenses for which each was liable for his one-half portion; that out of such sales should be deducted by the second party any sums ''advanced to the party of the first part.'' The final clause repealed the statement that ''all expense of any kind and nature attending the sale of said tract . . . shall be borne equally'' and ended with the statement that from the net profits falling to the owner, deduction should be made ''for any money advanced by the party of the second part.''

From the undisputed findings of the court, we have the concrete facts that as to such carrying charges the party of the second part did advance for the account of the owner, Beamish, the sum of $3,252.62, and during said time the party of the second part advanced as personal loans to said owner the sum of $1,916.43. Does the doctrine of *Hunt* v. *Rousmanier, supra,* apply to advances and loans of this type? Does the termination of the agency leave the agent without redress against the property? The inapplicability of this doctrine to these advances is manifest when we bear in mind the nature of the claims. These claims have an existence independent of the exercise of the power conferred. On termination of the contract, if not before, the owner could be sued upon these demands, whether the agency had or had not been exercised. The right to reimbursement does not come into being merely by the exercise of the agency conferred. It must have been the intent of the parties that on termination of the agency prior to a fulfillment of its terms, a lien should be im-

pressed upon the property to secure the obligation of the owner to the agent for the advancements received.

As was well said in the case of *Marziou* v. *Pioche*, 8 Cal. 522, 536: "Where an agent, for the collection of debts, or the sale of property, advances money to his principal before he collects the debt, or sells the property, it must be presumed, from the nature and character of the transactions, that the parties intend the agent shall have a lien for his advances, unless there is 'an express stipulation' to the contrary. It makes no difference whether the advances be made before or after the power is given, so they are approved by the principal. And when the principal, as in this case, expressly gives the power, for the very purpose of providing the means to return the advances made by the agent, there would seem to be no doubt as to the irrevocable character of the power. (5 Cal. 469, *Posten* v. *Rasette*.)"

This principle has been well stated by Mr. Pomeroy in his work on Equity Jurisprudence, volume 3, fourth edition, section 1235, page 2962, as follows: "The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice."

The doctrine is stated in Ruling Case Law, volume 17, page 604, paragraph 13, as follows: "To dedicate property to a particular purpose, to provide that a specified creditor and that creditor alone shall be authorized to seek payment of his debt from the property or its value, is unmistakably to create an equitable lien."

In the case of *Tinsley* v. *Durfey*, 99 Ill. App. 239, 242, 243, we have a situation very similar to the case before us. Tinsley was indebted to Durfey in a certain sum and Durfey and his associates were constituted agents of the owner for the purpose of sale of the property. Exclusive control of the sale was given to them and it was provided that when any

portion of the property was sold, the sums should become then due and payable. Speaking of that situation, the court said: "In the event of sale, unquestionably, the contract gave complainants a lien upon the proceeds. While it allowed Tinsley the right to fix the price, it contemplated, and the law inferred that he should fix a reasonable price and that the sale should be made within a reasonable time. Equity treats that as done which ought to be done, and as Tinsley had refused to fix a price and had incumbered the title with mortgages, it follows as a logical sequence that complainants' debt became due and a lien on the land attached. The form of the agreement which shall create a lien is not very material, for equity looks at the intent and purpose rather than at the form; and so it has been held that an agreement in writing, whereby the contracting party indicates an intention to make some particular property, or the fund arising from the sale of it, security for a debt, or other obligation, creates an equitable lien upon the property so indicated. 3 Pomeroy's Equity Jurisprudence, secs. 1235, 1236; *Near* v. *Donnelly*, 80 Mich. 130 [44 N. W. 1118]."

The above quotation from Mr. Pomeroy has been twice expressly approved in California appellate jurisdictions—*Title Ins. etc. Co.* v. *California Dev. Co.*, 171 Cal. 173, at pages 200–202 [152 Pac. 542]; *Nau* v. *Santa Ana Sugar Co.*, 79 Cal. App. 685 [250 Pac. 705]. See, also, *Walker* v. *Brown*, 165 U. S. 654, 664 [41 L. Ed. 865, 17 Sup. Ct. Rep. 453, see, also, Rose's U. S. Notes]; *United States* v. *Butterworth etc. Corp.*, 267 U. S. 389, 393 [69 L. Ed. 672, 45 Sup. Ct. Rep. 338]. In *Jones* v. *Carpenter*, 90 Fla. 407 [43 A. L. R. 1409, 106 South. 127], the history and nature of equitable liens are fully considered.

█ It should be noted in this connection that the rights of respondent herein accrued prior to the rights of either plaintiff or his predecessors and that plaintiff stands in the shoes of a purchaser or encumbrancer with full notice. It seems that the predecessors of appellant allowed respondent to remain in possession of said property and to exercise the agency conferred for approximately nine years after the transfer of title from Beamish. Appellant, by the institution of this action in 1924, for the first time essayed to terminate it. This he had the right to do, but in so doing the equitable

lien above described attached and became enforceable; hence the conclusion above announced.

Richards, J., Curtis, J., Langdon, J., and Seawell, J., concurred.

WASTE, C. J., Concurring.—I concur, but only in so far as the majority opinion rests upon the theory that the transaction between Beamish and the respondent resulted in an equitable lien in favor of the respondent.

Rehearing denied.

All the Justices concurred.