[In Bank—November 28, 1883.]

## EUGENE MURRAY, APPELLANT, *v.* ALFRED A. GREEN ET AL., RESPONDENTS.

DEED—CONDITION IN RESTRAINT OF ALIENATION. — Where the granting clause in a deed purporting to convey a title in fee simple is followed by a clause prohibiting the grantee from conveying without the consent of the grantor, the latter clause is repugnant to the interest created by the former, and being in restraint of alienation, it is void.

EJECTMENT — AFTER ACQUIRED TITLE. — A title acquired by a defendant in eject-
ment after the commencement of the action is not affected by the judgment in
such action.

EVIDENCE — JUDGMENT — APPEAL. — A judgment, pending an appeal therefrom,
cannot be given in evidence in any controversy between the parties.

APPEAL from a judgment of the Superior Court of the city
and county of San Francisco, and from an order refusing a new
trial.

The facts sufficiently appear in the opinion of the court.

*E. A. Lawrence,* and *Mat. I. Sullivan,* for Appellant.

*B. S. Brooks,* for Respondent.

SHARPSTEIN, J. — When this case was here on a former
appeal, the court said : —

" The nature and effect of the instrument executed by and
between Mary Ann Roussel and husband and McLeran, has not
been discussed by counsel, but they treat it as a deed of convey-
ance, and no objection is suggested as to the validity of any of
the clauses of the instrument. One of those clauses prohibits
McLeran from selling, conveying, or otherwise disposing of any
of the lands without the written consent of Mary Ann Roussel.
The deed of McLeran to Murray, made during the pendency of
the action of *McLeran* v. *McNamara et al.,* having been made
without the written consent of Mary Ann Roussel, is abso-
lutely void as a conveyance of any interest acquired by McLeran
under the first mentioned deed, if the above clause is valid.

" The *habendum* clause recites that the premises are held, the
undivided half for McLeran and the other half in trust for said
Mary Ann, and another clause provides that if McLeran shall
obtain the seizin or possession of any of the lands, such seizin
and possession shall *ipso facto* operate to invest the said Mary
Ann with the legal seizin, possession, and estate of, and in the
undivided half thereof, at her election. It is unnecessary at
this time to define the precise effect of each of those clauses, but
it is sufficient to say that, if valid, they vested in said Mary
Ann or her assigns, the legal title to the undivided half of the
land in controversy, it being the land which McLeran recovered
of Murray in the above mentioned action.

"Pending that action Mary Ann Roussel and her husband and McLeran executed a deed purporting to convey this land to Moon, and he conveyed the same to Porter, the defendant's lessor, who held the same at the commencement of this action. From these facts it results that Porter holds the entire title to the tract of land in controversy, or the undivided half thereof— that is to say, the entire title if the deed of McLeran to Murray is void because of the first mentioned clauses of the deed, or the title to the undivided half, if he can rely only on the last two mentioned clauses of the deed. The finding, therefore, to the effect that the plaintiff Murray is the owner in fee of the premises is contrary to the evidence." (4 Pac. C. L. J. 215.)

The foregoing will be better understood, if it be stated that the deed of McLeran to Murray antedates that of McLeran and the Roussels to Moon, who conveyed to Porter, the lessor of the defendant. So that the case turns upon the construction of the deed of the Roussels to McLeran. If that vested in him any title to the premises or to any part thereof, his deed to plaintiff doubtless conveyed such title to the latter. But it was determined on the former appeal that the deed of McLeran did not convey any title to more than an undivided one half of said premises to the plaintiff; leaving it an open question whether it conveyed any title whatever. By the terms of the deed of the Roussels to McLeran they granted, bargained, and sold to said McLeran, his heirs and assigns, all the lands, tenements, and hereditaments of Mary Roussel situated in San Francisco, to have and to hold the undivided moiety thereof, to the proper use and behoof of him the said McLeran, his heirs and assigns, subject however to the provisions thereinafter inserted, as to the power and control of said McLeran over the said moiety so conveyed to his own use; and to hold the other undivided moiety in trust for the sole and separate use of the said Mary Ann Roussel and her heirs, "in manner following, that is to say, in conjunction with the said parties of the first part, or the said Mary Ann Roussel and not otherwise, to demand, sue for, enter, take, and hold seizin and possession of the same. . . . . Provided, however, that the said Thomas G. McLeran shall not have any power or authority to sell, convey, or in anywise to dispose of, charge, or encumber any part or portion of

said property, land, tenements, or hereditaments hereinbefore mentioned and conveyed to him, whether the same be that moiety conveyed to him for his own use or that moiety conveyed to him in trust for the use and benefit of the said Mary Ann; nor shall he have any authority to make or deliver any lease, leases, or releases, nor any acquittance nor adjustments of or concerning said land, tenements, or hereditaments, without obtaining the proper signature and written consent of the said Mary Ann, to each and every instrument or writing whereby any of said matters and things may be done; and provided, further, that whenever the said McLeran shall hereafter obtain seizin or possession of any of said property hereinbefore mentioned, such seizin and possession of him, the said McLeran, shall, *ipso facto*, operate to invest the said Mary Ann with the legal seizin and possession of the one undivided half thereof, and to invest her with the legal estate in the one undivided one half thereof, at her election; and if for her better security in that behalf, the said Mary Ann shall hereafter make demand of the said McLeran in that behalf, then the said McLeran shall convey to her in fee the one undivided moiety of all or any part of said land, tenements, or hereditaments whereof he may have become actually seized or possessed as aforesaid."

This is followed by a covenant of the Roussels, that while said McLeran is faithfully carrying out said trusts they will not nor will either of them without his consent convey or affect the title held by them or either of them to any of said lands, and that any conveyance made by them contrary to this clause shall be null and void. And finally McLeran covenants that he will faithfully perform said trusts at his own proper costs and charges. But for the provision in regard to alienation, the grant of an undivided moiety of the premises to McLeran would be full, absolute, and explicit. And if the provision in regard to alienation be a condition restraining alienation, and repugnant to the interest created, it is void. (Civ. Code, § 711.)

This is simply declaratory of the common law (Coke upon Littleton, 223 *a*), and is not controverted. It is also conceded by counsel for respondent that the clause of the deed is one restraining alienation, but is not, he insists, *repugnant to the interest created*, and therefore not void. Independently of the

condition, the interest created by this deed is the largest possible estate which a man can have in land. And one of the incidents *inseparably annexed* to an estate in fee simple is the right of alienation, which "passes by the grant as perfectly as if it were given by the express grant. Without such right the estate granted would be neither a fee simple nor any other estate known to the law." (*De Peyster* v. *Michael*, 6 N. Y. 466.) "A condition annexed to an estate given is a divided clause from the grant, and therefore cannot frustrate the grant precedent, neither in anything expressed nor in anything implied which is of its nature incident and is separable from the thing granted." (Hobart, 170.) "The reason why such a condition cannot be made good by agreement or consent of parties, is that a fee simple estate and a restraint upon its alienation cannot in their nature co-exist." (*De Peyster* v. *Michael, supra.*)

It is difficult to conceive of a condition more clearly repugnant to the interest created by a grant of an estate in fee simple than the condition that the grantee shall not alien the same without the consent of the grantor. With such a condition, if valid, annexed to the grant, it "would be neither a fee simple nor any other estate known to the law."

The owner of the reversion or possibility of reverter may restrain the alienation by his grantee in fee. This appears in Brooke's Abridgement, title, "Condition," 57 *a.* "If a man have lands for a term of years on condition that he shall not grant over his estate, this is good by reason of the reversion remaining in the lessor. The contrary of a feoffment on such condition, or that the feoffee shall not waste, for no right or interest remains in the feoffer." In a grant to a corporation, on the dissolution of which there would be a reverter to the grantor, a condition against alienation would be valid, but in the absence of a possibility of reverter, the imposition of such restraint is not sanctioned by any case so far as we are advised.

But it is claimed that while a general restraint upon alienation is bad, a partial restraint is valid. But is it not obvious that in case of a grant in fee simple, where there is no possibility of reverter, any restraint whatever on the power of alienation would be repugnant to the interest created by the grant? In commenting upon the clause in which Littleton says: "But if

the condition be such that the feoffee shall not alien to such a one, naming his name, or to any of his heirs, or of the issue of such a one, etc., or the like, which conditions do not take away all power of alienation from the feoffee, etc., there such condition is good." Chancellor Kent says: "But this falls within the general principle, and it may be very questionable whether such a condition would be good at this day." (4 Kent's Com. 131.)

In Doe *d, Gill* v. *Pearson,* 6 East, 173, it was held that a condition only to alien to a particular person or persons is good. But this has been distinctly overruled in *Attwater* v. *Attwater,* 18 Beav. 330. In the note to *Bradley* v. *Peixoto* (Tudor's Real Property, 862), it is said: "A condition not to alien within a limited time, it seems, is good," and cites *Churchill* v. *Marks,* 1 Colles, 455, and *Large's Case,* 2 Leon, 82. An examination of *Churchill* v. *Marks* satifies us that it does not support that proposition; and it has been demonstrated that Large's was a case of contingent remainder, in which this question was not involved. (*Mandlebaum* v. *McDonell,* 29 Mich. 78.)

In the case before us the restriction is not limited as to time or persons. In these respects it is general, and, in our opinion, void.

Respondent's counsel relies very much on *Sprague* v. *Edwards,* 48 Cal. 239, in which it was held that when a conveyance is made to a trustee, who has no interest in the trust fund, with power to sell and convey the trust land, subject to the approval of the *cestui que trust,* the deed of a trustee to a purchaser will not pass the legal title without the approval of the *cestui que trust.*

It is impossible to discover the slightest analogy between that case and this. The doctrine there announced might apply to the conveyance of the undivided moiety in trust from Mrs. Roussel, which, as before shown, is wholly eliminated from this case.

The title which the plaintiff acquired from McLeran after the commencement of the action of *McLeran* v. *McNamara et al.,* in which plaintiff was a defendant, was not in issue in that action, and therefore was not affected by the judgment therein. Having acquired that title after his answer in that action was

filed, Murray might do as he has done, wait until he was ousted, and then bring an action, founded upon a title acquired subsequently to the commencement of that action, to recover possession. "Under the Code a judgment in ejectment is conclusive of but two points: the right of the possession in the plaintiff at the commencement of the suit, and the occupation of the premises by the defendant at the same date." (Freeman on Judgments, 301; *Yount* v. *Howell,* 14 Cal. 465.)

While the appeal from the judgment in *Porter* v. *Woodward et al.* was pending, the operation of that judgment for all purposes was suspended, and it was not admissible in evidence in any controversy between the parties. (Freeman on Judgments, 328; *Woodbury* v. *Bowman,* 13 Cal. 634.)

The conclusion at which we have arrived is that by the deed of McLeran to Murray he acquired the fee of an undivided moiety of the demanded premises, and that the court erred in finding otherwise.

Judgment and order reversed.

MORRISON, C. J., THORNTON, J., McKEE, J., and McKINSTRY, J., concurred.