[L. A. No. 27261.   In Bank.   May 21, 1964.]

COAST BANK, Plaintiff and Respondent, v. W. J. MINDERHOUT et al., Defendants and Appellants.

F. W. Audrain and Abraham Resisa for Defendants and Appellants.

Baker, Farnham & Began and William D. Began for Plaintiff and Respondent.

Morrison, Foerster, Holloway, Clinton & Clark, Russell E. Teasdale and Robert D. Raven as Amici Curiae on behalf of Plaintiff and Respondent.

TRAYNOR, J.—Defendants appeal from a judgment foreclosing an equitable mortgage on certain real property in San Luis Obispo County. The trial court overruled defendants' general demurrer and upon defendants' failure to answer the complaint decreed foreclosure and ordered a sale of the property. (See Code Civ. Proc., § 585, subd. 4.)

From January 18 to November 12, 1957, plaintiff bank[1] made several loans to Burton and Donald Enright, who executed a promissory note for the full amount of the indebted-

---

[1] Formerly known as Bank of Belmont Shore.

ness. In a separate instrument dated January 18, 1957,[2] the Enrights agreed that they would not transfer or encumber without plaintiff's consent certain real property owned by them until all of their indebtedness was paid. If the Enrights defaulted, plaintiff could declare all remaining indebtedness due forthwith. Plaintiff immediately recorded the instrument as authorized therein. In November 1958, while part of the indebtedness was still unpaid, the Enrights conveyed the property to defendants without plaintiff's knowledge or consent. Defendants concede that they had not only constructive but actual knowledge of the terms of the agreement. Plaintiff apparently elected to accelerate the due date, but was unable to collect the unpaid balance. It then brought this action to foreclose the equitable mortgage that it claims the instrument created.

"[E]very express executory agreement in writing, whereby the contracting party sufficiently indicates an inten-

[2]"AGREEMENT NOT TO ENCUMBER OR TRANSFER PROPERTY

" (For use with Property Improvement Loan)

"In consideration of any loan or advance made by Bank of Belmont Shore (hereinafter referred to as 'Bank') to the undersigned, either jointly or severally, the undersigned (hereinafter referred to as 'Borrower' whether one or more), jointly and severally promise and agree that until all such loans and advances and all other indebtedness or liabilities to the Bank shall have been paid in full, or until 21 years following the death of the last survivor of the undersigned, whichever shall first occur, they will pay all taxes, assessments and charges of every kind, imposed or levied, or which may be imposed or levied upon the hereinafter described real property prior to the time when any of such taxes, assessments or charges shall become delinquent and will not, without the consent in writing of Bank, first had and obtained, create or permit any lien or other encumbrances (other than those presently existing and/or securing the payment of loans and advances made to them by Bank) to exist on said real property, and will not transfer, sell, hypothecate, assign, or in any manner whatever dispose of said real property, or any interest therein or any portion thereof, which real property is situated in *San Luis Obispo* County, California. ... [Description omitted.]

"It is further agreed and understood that if default be made in the performance of any of the terms hereof, or of any Instrument executed by Borrower in connection herewith, or in the payment of any indebtedness or liabilities now or hereafter owing to Bank, Bank may, at its election, in addition to all other remedies and rights which it may have by law, declare the entire remaining unpaid principal and interest of any obligations or indebtedness then remaining unpaid to the Bank due and payable forthwith.

"It is further agreed and understood that Bank may, in its discretion, and is hereby authorized by Borrower, to cause this instrument to be recorded at such time and in such places as Bank may, in its discretion elect."

tion to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation . . . creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his ... purchasers or encumbrancers with notice.'' (4 Pomeroy, Equity Jurisprudence (5th ed. Symons) § 1235.) Thus, a promise to give a mortgage or a trust deed on particular property as security for a debt will be specifically enforced by granting an equitable mortgage. (*McColgan* v. *Bank of California Assn.*, 208 Cal. 329, 336-337 [281 P. 381, 65 A.L.R. 1075]; *Daggett* v. *Rankin*, 31 Cal. 321, 327.) ▮ An agreement that particular property is security for a debt also gives rise to an equitable mortgage even though it does not constitute a legal mortgage. (*Higgins* v. *Manson*, 126 Cal. 467, 470 [58 P. 907, 77 Am. St. Rep. 192]; *Dingley* v. *Bank of Ventura*, 57 Cal. 467, 472; *Racouillat* v. *Sansevain*, 32 Cal. 376, 388-389.) If a mortgage or trust deed is defectively executed, for example, an equitable mortgage will be recognized. (*Burns* v. *Peters*, 5 Cal.2d 619, 625 [55 P.2d 1182]; *Title Ins. & Trust Co.* v. *California Development Co.*, 171 Cal. 173, 201-202 [152 P. 542]; *Earle* v. *Sunnyside Land Co.*, 150 Cal. 214, 227-228 [88 P. 920]; *Peers* v. *McLaughlin*, 88 Cal. 294, 297-298 [26 P. 119, 22 Am. St. Rep. 306]; *Remington* v. *Higgins*, 54 Cal. 620, 623-624; see *Love* v. *Sierra Nev. Lake Water & Mining Co.*, 32 Cal. 639, 652 [91 Am. Dec. 602].) Specific mention of a security interest is unnecessary if it otherwise appears that the parties intended to create such an interest. (*McColgan* v. *Bank of California Assn.*, supra, 208 Cal. 329, 338; *Earle* v. *Sunnyside Land Co.*, supra, 150 Cal. 214, 228; *Higgins* v. *Manson*, supra, 126 Cal. 467, 469.)

▮ Defendants contend that the instrument did not create an equitable mortgage because it does not show on its face that the parties intended to make the property security for the indebtedness. They suggest that the parties intended to protect the lender in another manner than by giving it a security interest in the property and point out that the parties must have been familiar with the usual methods of creating a legal mortgage or trust deed on real property. In their view, plaintiff simply extended unsecured credit to the Enrights as property owners while retaining the power to withdraw the credit by accelerating the due date of the indebtedness if the Enrights breached their agreement not to convey or encumber the property. They invoke cases from other juris-

dictions holding that comparable instruments do not create security interests. (*B. Kuppenheimer & Co.* v. *Mornin,* 78 F.2d 261, 263-264; *Fisher* v. *Safe Harbor Realty Co.* (Del.) 150 A.2d 617, 620; *Western States Fin. Co.* v. *Ruff,* 108 Ore. 442, 449-454 [215 P. 501, 216 P. 1020] ; *Knott* v. *Shepherds-town Manufacturing Co.,* 30 W.Va. 790, 796 [5 S.E. 266] ; see also Osborne, Mortgages, § 44.)

In the present case, however, plaintiff pleaded and defendants admitted by demurring and failing to answer that the parties intended to create a security interest in the property. Accordingly, the question presented is not what meaning appears from the face of the instrument alone, but whether the pleaded meaning is one to which the instrument is reasonably susceptible. (*Richards* v. *Farmers' & Merchants' Bank,* 7 Cal.App. 387, 395 [94 P. 393] ; see 2 Witkin, Cal. Procedure, pp. 1231-1232.) It is essentially the question that would be presented had defendants denied that the parties intended to create a security interest and plaintiff had offered extrinsic evidence to prove that they did. Such evidence would be admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible. (*Imbach* v. *Schultz,* 58 Cal.2d 858, 860-861 [27 Cal.Rptr. 160, 377 P.2d 272] ; see Rest. Contracts, § 235(d) ; Code Civ. Proc., § 1860; *Reid* v. *Overland Machined Prods.,* 55 Cal.2d 203, 210 [10 Cal.Rptr. 819, 359 P.2d 251] ; *Beneficial Fire & Cas. Ins. Co.* v. *Kurt Hitke & Co.,* 46 Cal.2d 517, 524-525 [297 P.2d 428] ; *Barham* v. *Barham,* 33 Cal.2d 416, 422-423 [202 P.2d 289] ; *Balfour* v. *Fresno Canal & Irr. Co.,* 109 Cal. 221, 225-226 [41 P. 876].)

The instrument restricts the rights of the Enrights in dealing with their property for plaintiff's benefit; it describes itself as ''For use with Property Improvement Loan,'' it specifically sets forth the property it covers, and it authorizes plaintiff to record it. These provisions afford some indication that the parties intended to create a security interest and are clearly sufficient to support the pleaded meaning.

Defendants contend that even if the instrument created an equitable mortgage, it cannot be given effect because it contains an invalid restraint on alienation. The provision that the Enrights would not transfer the property without plaintiff's consent is a restraint on alienation. (*Fritz* v. *Gilbert,* 8 Cal.2d 68, 71 [63 P.2d 291] ; *Prey* v. *Stanley,* 110 Cal. 423, 426 [42 P. 908] ; *Murray* v. *Green,* 64 Cal. 363, 367 [28 P. 118].) A restraint created by contract is governed

by the rules that govern a restraint in a conveyance (*Prey* v. *Stanley, supra,* 110 Cal. 423, 427), and it has frequently been stated that any restraint on alienation is invalid. (*Los Angeles Inv. Co.* v. *Gary,* 181 Cal. 680, 682 [186 P. 596, 9 A.L.R. 115]; *Bonnell* v. *McLaughlin,* 173 Cal. 213, 216 [159 P. 590]; *Murray* v. *Green, supra,* 64 Cal. 363, 368; *Title Guar. & Trust Co.* v. *Garrott,* 42 Cal.App. 152, 158 [183 P. 470].)

The view that the common-law rule against restraints on alienation[3] prohibits all such restraints has been forcefully criticized on the ground that it loses sight of the purposes of the rule and needlessly invalidates reasonable restraints designed to protect justifiable interests of the parties. (See Sweet, *Restraints on Alienation,* 33 L.Q.Rev. 236, 246-253; Manning, *The Development of Restraints on Alienation Since Gray,* 48 Harv.L.Rev. 373, 398-400, 406; *Northwest Real Estate Co.* v. *Serio,* 156 Md. 229, 236 [144 A. 245] (Chief Judge Bond dissenting); cf. Simes & Smith, Future Interests (2d ed.) §§ 1115, 1168; Bernhard, *The Minority Doctrine Concerning Direct Restraints on Alienation,* 57 Mich.L.Rev. 1173, 1177.)

The protection of several such interests has been recognized as justifying reasonable restraints on alienation. Spendthrift trusts are permitted because of the settlor's interest in protecting potentially improvident beneficiaries. (Civ. Code, §§ 859, 867; *Seymour* v. *McAvoy,* 121 Cal. 438, 442-443 [53 P. 946, 41 L.R.A. 544].) A lease for a term of years can be made terminable upon alienation because of the lessor's interest in the personal character of the lessee. (See *People* v. *Klopstock,* 24 Cal.2d 897, 901 [151 P.2d 641]; *Chapman* v. *Great Western Gypsum Co.,* 216 Cal. 420, 426-427 [14 P.2d 758, 85 A.L.R. 917]; *Murray* v. *Green, supra,* 64 Cal. 363, 367; see Rest., Property, § 410.) A life estate can be made terminable upon alienation because of the interest of the remainderman in the life tenant's character. (See *Hall* v. *Brittain,* 171 Cal. 424, 425 [153 P. 906]; Rest., Property, § 409.) A corporation can restrict the transfer of its shares because of the interest of shareholders in the persons with whom they are in business. (See Corp. Code, § 501, subd. (g); *Vannucci* v. *Pedrini,* 217 Cal. 138, 143-145 [17 P.2d 706]; *Tu-Vu Drive-In Corp.* v. *Ashkins, ante,* p. 283 [38 Cal.

---

[3]The rule is partially codified in Civil Code section 711, which provides: "Conditions restraining alienation, when repugnant to the interest created, are void."

Rptr. 348, 391 P.2d 828].) A restraint on alienation in an executory land contract has been upheld because of the vendor's interest in the upkeep of the property and in the character and integrity of the purchaser. (*Sloman* v. *Cutler,* 258 Mich. 372, 376 [242 N.W. 735]; see Goddard, *Non-Assignment Provisions in Land Contracts,* 31 Mich.L.Rev. 1; *In re Congested Dists. Board* (1919) 1 Irish R. 146, 150; cf. Rest., Property, § 416.) In the present case it was not unreasonable for plaintiff to condition its continued extension of credit to the Enrights on their retaining their interest in the property that stood as security for the debt. Accordingly, plaintiff validly provided that it might accelerate the due date if the Enrights encumbered or transferred the property.

Whether the promise not to transfer or encumber the property would be directly enforcible by injunction, specific performance or an action for damages is another question. It is open to doubt whether such a promise would be a reasonable restraint when, as in this case, plaintiff had the additional protection of a security interest and the right to declare the entire debt due in the event of default. It is unnecessary, however, to decide this question now. Plaintiff is seeking not to enforce the Enrights' promise not to transfer the property but only to foreclose its security interest. The creation of that interest was a separate lawful object of the agreement. (Civ. Code, § 1599; *Bonnell* v. *McLaughlin, supra,* 173 Cal. 213, 216; *Murray* v. *Green, supra,* 64 Cal. 363, 369.)

The judgment is affirmed.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., Tobriner J., and Peek, J., concurred.