[Civ. No. 10631. Fourth Dist., Div. One. Nov. 19, 1971.]

ORANGE COUNTY TEACHERS CREDIT UNION,
Plaintiff and Respondent, v.
SALLY V. PEPPARD, Defendant and Appellant.

**COUNSEL**

Kenneth H. Slimmer and Albert J. Federman for Defendant and Appellant.

Wallace, Brown & Crain and E. Gene Crain for Plaintiff and Respondent.

**OPINION**

**AULT, J.**—Sally V. Peppard, the defendant homeowner, appeals from a judgment of the Orange County Superior Court which holds an instrument entitled "Agreement and Assignment of Rents" to be an equitable mortgage, and decrees its foreclosure.

### FACTS

On June 24, 1963, Benny L. Zane and his wife Wanda applied for a loan from plaintiff Orange County Teachers Credit Union (Credit Union). The credit application listed the following items as collateral, with the loan values the Credit Union assigned to them:

| | |
|---|---:|
| 2 signatures | $1,500 |
| Chattel mortgage, furniture | 2,150 |
| Chattel mortgage, automobile | 600 |
| Assignment | No value |
| Total | $4,250 |

On the same day the Zanes signed an installment promissory note in the amount of $4,250. Part of the money was to be used to pay off previous loans from the Credit Union.

The Credit Union waited for over a month before actually paying the money to the Zanes, to allow "time to check and verify certain things involved in the loan." During this period, it obtained a "lot book report" on real property owned and occupied by the Zanes. However, the Credit Union did not inspect the property, did not verify the price the Zanes had actually paid for it, and although knowing the property was encumbered, did not check to see if the payments were current or the taxes paid.

The loan in the amount of $4,250 was made on July 29, 1963, after Mr. and Mrs. Zane signed an "Agreement and Assignment of Rents," a printed standard form drafted and selected by the Credit Union,[1] which recorded it the following day.

---

[1]The document reads as follows: "AGREEMENT AND ASSIGNMENT OF RENTS    In consideration of and as security for such loans or advances as shall be made by or become due to ORANGE COUNTY TEACHERS CREDIT UNION, a California corporation, hereinafter referred to as 'Credit Union,' to or from the undersigned, jointly and severally, and until all such loans or advances shall have been paid in full or until 21 years following the death of the last survivor of the undersigned, whichever shall first occur, the undersigned, jointly and severally, promise and agree: 1. To pay all taxes, assessments, dues and charges of any kind imposed or levied or which may be imposed or levied or become a lien against the real property hereinafter described, prior to the time when any such taxes, assessments, dues or charges shall become delinquent, and 2. Without the prior written consent of Credit Union, to refrain from creating or permitting any lien or other encumbrance, other than the liens presently existing or liens securing the payment of loans and advances made to them or any of them or due from them or any of them to Credit Union, to exist on said real property, and to refrain from transferring, selling, hypothecating, assigning or in any manner whatever disposing of the following described real property situate in the County of Orange, State of California: Lot 30 of Tract No. 4428, as per map recorded in Book 155, pages 22, 23 and 24 of Miscellaneous Maps, in the office of the county recorder of said county, also known as 1325 Ponderosa Avenue, Fullerton, California

As further consideration of such loans and advances and as further security therefor, the undersigned, jointly and severally, hereby assign, transfer and set over to Credit Union, its successors and assigns, all moneys now due or hereafter becoming due to the undersigned, or any of them, as rent or otherwise from, for, or on account of said real property, and hereby irrevocably authorize and direct all lessees, escrow holders and others to pay to Credit Union on demand all rent or other moneys whatsoever and whensoever becoming due to the undersigned or any of them, from, for, or on account of said real property, and hereby irrevocably appoint Credit Union as attorneys in fact with full power and authority in the name of the undersigned or any of them to endorse and negotiate checks, drafts or other instruments received in payment of said rents or other moneys, and to receive, receipt for and enforce payment by suit or otherwise of said rents, or other moneys, but agree that Credit Union shall have no obligation so to do or perform or discharge any obligation, duty or liability of the undersigned or any of them in connection therewith.

If default be made in the performance of any of the terms hereof or of any

By May 1964 the Zanes were in default on the loan and, although their monthly payments were reduced by an extension agreement, made only one small payment thereafter. Mr. Zane transferred his interest in the real property to Mrs. Zane in a divorce settlement, giving notice to Credit Union. The Credit Union also had notice of Mr. Zane's bankruptcy and of the fact neither Mr. nor Mrs. Zane was occupying the real property. It, nevertheless, made no attempt to enforce the agreement or collect the rents from the property and in July 1965 wrote the loan off as a bad debt.

In 1966 Mrs. Zane sold the property to a Mr. and Mrs. Dodson who, in June 1968, sold it to Sally V. Peppard, the present record owner.

. In September 1968 the Credit Union filed this action to establish and foreclose an equitable mortgage, naming as defendants Sally Peppard (appellant), the Dodsons and the Zanes. The complaint alleged the agreement and assignment of rents was executed to secure payment of the principal sum and interest as provided in the note and that it created a lien upon the real property. The Dodsons and Sally V. Peppard answered the complaint, denying these allegations and asserting several affirmative defenses.

At the trial, the Credit Union's evidence consisted of the promissory note and the agreement and assignment, together with the testimony of its assistant manager, Mr. Martin. He testified the loan would not have been made without the agreement and assignment and the other collateral, and that the principal owing on the note was $3,829.98. He admitted the Credit Union had made no attempt to collect the money until this action was filed.

Judgment was entered ordering foreclosure of the agreement and assignment of rents as an equitable mortgage for the sum of $5,743.91 principal and interest, $600 attorney fees, and actual costs of foreclosure and sale. Sally V. Peppard, the present record titleholder, has appealed from the judgment. The propriety of the judgment rests upon the construction to be placed on the instrument upon which it is based.

In making a determination, we are confronted with two California Supreme Court cases, both of which involved the effect to be given instru-

instrument executed by the undersigned in connection herewith or in the payment of any indebtedness or obligation now or hereafter owing to Credit Union by the undersigned or any of them or in the payment of any of the aforesaid rents or other moneys, Credit Union, at its option, may declare the entire remaining unpaid principal and interest of any obligations or indebtedness of the undersigned or any of them then remaining unpaid to Credit Union, due and payable forthwith.

Credit Union may and hereby is authorized and permitted to cause this instrument to be recorded at such times and in such places as Credit Union in its discretion may elect. Dated: July 29, 1963. (ss) Benny Lawrence Zane Wanda May Zane."

ments substantially similar to each other and to the one in question here, which arrived at different results. In *Coast Bank* v. *Minderhout*, 61 Cal.2d 311 [38 Cal.Rptr. 505, 392 P.2d 265], the court *affirmed* a judgment which held an "Agreement Not To Encumber Or Transfer Property" was an equitable mortgage and decreed its foreclosure. In *Tahoe National Bank* v. *Phillips*, 4 Cal.3d 11 [92 Cal.Rptr. 704, 480 P.2d 320], the court *reversed* a judgment which held an "Assignment of Rents and Agreement not to Sell or Encumber Real Property" was an equitable mortgage and decreed its foreclosure. While the two cases reached the court in different context, the factors of differentiation are not entirely clear.

In *Coast Bank*, persons named Enright borrowed money from the bank, gave a promissory note and, in a separate instrument, agreed not to transfer certain described real property without the bank's consent or until their indebtedness to the bank was paid. The agreement was recorded. In violation of the agreement, the Enrights conveyed the property to the Minderhouts, who not only had constructive but actual knowledge of the terms of the agreement. The bank sued to foreclose, alleging the parties by their agreement intended to create a security interest in the property. The defendants demurred to the complaint and, when their demurrer was overruled, failed to answer. The trial court held the agreement was an equitable mortgage and decreed foreclosure.

The Supreme Court affirmed the judgment, saying: ". . . *plaintiff pleaded and defendants admitted* by demurring and failing to answer that *the parties intended to create a security interest* in the property. Accordingly, the question presented is not what meaning appears from the face of the instrument alone, but *whether the pleaded meaning is one to which the* instrument is reasonably susceptible." (Italics added.) (*Coast Bank* v. *Minderhout*, 61 Cal.2d 311, 315 [38 Cal.Rptr. 505, 392 P.2d 265].) To this statement the court added: "It is essentially the question that would be presented had defendants denied that the parties intended to create a security interest and plaintiff had offered extrinsic evidence to prove that they did. Such evidence would be admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible." (*Coast Bank* v. *Minderhout*, 61 Cal.2d 311, 315 [38 Cal. Rptr. 505, 392 P.2d 265].) Finally the court held: "The instrument restricts the rights of the Enrights in dealing with their property for plaintiff's benefit; it describes itself as 'For use with Property Improvement Loan,' it specifically sets forth the property it covers, and it authorizes plaintiff to record it. These provisions afford some indication that the parties intended to create a security interest and are clearly sufficient to support the pleaded

meaning." (*Coast Bank* v. *Minderhout,* 61 Cal.2d 311, 315 [38 Cal.Rptr. 505, 392 P.2d 265].)

In the more recent case of *Tahoe National Bank* v. *Phillips, supra,* 4 Cal.3d 11, decided after judgment was entered here, the court had before it a similar agreement in which the borrower had covenanted not to encumber or transfer described real property, had given permission to record, but which in addition contained an assignment of rents. Based upon extrinsic evidence of intent introduced by the bank, the trial court found the parties intended to create an equitable mortgage and decreed its foreclosure against the original borrowers who had not conveyed or transferred title, but who were in default on the note.

The Supreme Court reversed, saying *Coast Bank* was not controlling (p. 20). The agreement was held not reasonably susceptible of interpretation as a mortgage at the instance of the bank. At page 14 of the opinion the court stated: "Plaintiff bank, which occupied the more powerful bargaining position and deliberately chose to use a standardized form providing for the assignment of rents and a covenant against conveyances, cannot be permitted to transform this assignment into a mortgage contrary to the reasonable expectation of its borrower. On examining the terms and purpose of the assignment, we conclude that it is not reasonably susceptible of construction as a mortgage at the instance of the bank, and thus that the trial court erred in invoking intrinsic evidence offered by the bank to prove it to be a mortgage." (*Tahoe National Bank* v. *Phillips,* 4 Cal.3d 11, 14 [92 Cal.Rptr. 704, 480 P.2d 320].) Later at page 20 the court emphasized: "In the present case, we conclude that to permit a creditor to choose an allegedly ambiguous form of agreement, and then by extrinsic evidence seek to give it the effect of a different and unambiguous form, would be to disregard totally the rules respecting interpretation of adhesion contracts, and to create an extreme danger of overreaching on the part of creditors with superior bargaining positions. The bank must bear the responsibility for the creating and use of the assignment it now claims is ambiguous; it is only 'poetic justice' (CEB, § 2.38) if such ambiguity is construed in favor of the borrower. Legal alchemy cannot convert an assignment into an equitable mortgage, violating the customer's reasonable expectation and bestowing upon the bank the riches of an hypothecation of title." (*Tahoe National Bank* v. *Phillips,* 4 Cal.3d 11, 20 [92 Cal. Rptr. 704, 480 P.2d 320].) Extrinsic evidence offered by the bank to prove the document a mortgage was held to be "legally irrelevant" and incapable of supporting the judgment (p. 16). The court said the covenant not to encumber which appeared in the instrument was inconsistent and inappropriate in an instrument creating a lien. The use of the phrase "as security

for a loan" found in the preamble was interpreted as a reference to the security afforded by the covenants themselves and the assignment of rents, not creating additional unspecified rights and duties (pp. 18-19).

While coming to an opposite conclusion, it is significant to note the court in *Tahoe Bank* did not overrule or disapprove *Coast Bank,* but distinguished it. After pointing to two differences in the provisions of the instruments under consideration in the respective cases, the court stressed the differing context in which the two cases appeared. In *Coast Bank,* the borrowers had breached the covenant prohibiting conveyance of the realty, and the foreclosure was directed against their successors in title. In *Tahoe Bank,* the borrower had not breached the covenant against conveyance, the foreclosure was directed against the original borrower and, without enforcement of the agreement as an equitable mortgage, her interest in the realty remained available to satisfy any judgment the bank might obtain on the note (pp. 20-21). Whether the court in *Tahoe Bank* would have invoked strict evidentiary rules pertaining to adhesion contracts to reverse the judgment had the case appeared before it in the context of *Coast Bank,* remains unclear. Apparently the adhesion contract argument was neither advanced nor considered in *Coast Bank.*[2]

In the matter before us, the original borrowers have breached the covenant in the agreement not to convey the realty, the foreclosure is directed against a successor in title, and the case appears in the *Coast Bank* context. It is not, however, necessary to invoke *Tahoe Bank* rules to resolve the appeal. If we assume extrinsic evidence was admissible to construe and interpret the instrument involved and to establish an intent by the parties to create a lien on the real property described in it, the extrinsic evidence introduced at the trial falls far short of the mark.

While the agreement under consideration differs in minor respects from the ones considered in *Coast Bank* and *Tahoe Bank,* it is substantially similar to both of them. Like those documents, its title gives no hint of the power of foreclosure, and it contains no language of hypothecation, no provisions imposing a lien or mortgage, and no discussion of foreclosure. Some of its provisions are consistent with a mortgage and some are inconsistent; all of its provisions, however, "are equally consistent with an instrument designed to afford the bank the security that the borrower retains unencumbered assets." (*Tahoe Bank,* p. 18.) Since none of its

---

[2]Since intent to create a lien on the described real property was admitted by the pleadings in *Coast Bank,* and no extrinsic evidence to prove intent was offered, the statement in the opinion "such evidence would be admissible to interpret the instrument" at the behest of the bank was not necessary to the opinion.

provisions purport to give the bank a lien on the described real property, it is apparent the document is, at the very least, ambiguous. If extrinsic evidence of intent is to be relied upon to establish the instrument as an equitable mortgage, that evidence must show an intent to create a lien on the described real property.

Here, the only extrinsic evidence introduced at the trial bearing on the the issue of intent was the testimony of the Credit Union's manager, Mr. Martin. Eliminating certain nonessential false starts, we repeat that testimony in full: "MR. CRAIN [attorney for the Credit Union]: And I am asking—excuse me. I am asking whether or not this loan would have been made by the Credit Union without the agreement and assignment.

THE WITNESS: No, sir.

THE COURT: The objection is overruled.

MR. SLIMMER: Move the answer be stricken, your Honor, self-serving, and it is—

THE COURT: The motion is denied.

MR. CRAIN: Nothing further."

The statement appearing in *Tahoe Bank, supra,* at page 17, is equally applicable to the agreement and assignment under consideration here: "Assignments similar to the present one are 'used by many banks in conjunction with small, nominally unsecured loans such as home improvement loans.' (California Real Estate Secured Transactions (Cont. Ed. Bar 1970) § 2.37 . . . .) They provide the lender with a measure of security unavailable in a totally unsecured loan; the creditor holds an assignment of rents and a contractual guarantee that property in which the debtor has an equity will remain unencumbered and unconveyed, and thus available for levy and execution should the creditor reduce his debt to judgment." (*Tahoe National Bank* v. *Phillips,* 4 Cal.3d 11, 17 [92 Cal.Rptr. 704, 480 P.2d 320].)

Testimony the Credit Union would not have made the loan without the agreement and assignment does nothing to remove ambiguities from the instrument, and is wholly consistent with what the agreement on its face purports to be, i.e., an agreement not to sell or encumber real property and an assignment of rents. Certainly it entirely fails to prove the contracting parties mutually intended to create a lien on the described real property.

Since neither the instrument itself nor the extrinsic evidence introduced at the trial, nor the two considered together, support the trial court's

finding the Zanes, by executing the agreement and assignment of rents, created a lien in favor of the Credit Union on the described real property as security for their debt, it follows the judgment of foreclosure must be reversed.

The judgment is reversed.

Brown (Gerald), P. J., and Coughlin, J.,* concurred.

A petition for a rehearing was denied November 29, 1971.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.