[No. B072189. Second Dist., Div. Six. July 28, 1994.]

WILLIAM H. LOVELADY et al., Plaintiffs and Appellants, v.
BRYSON ESCROW, INC., et al., Defendants and Respondents.

## COUNSEL

Nordman, Cormany, Hair & Compton, Larry L. Hines, Kent M. Kellegrew and William E. Winfield for Plaintiffs and Appellants.

Parker & Nelson, James Nelson, Lascher & Lascher, Wendy C. Lascher, Susan B. Lascher, England, Whitfield, Schroeder & Tredway, Mary E. Schroeder and Andrew S. Hughes for Defendants and Respondents.

## OPINION

**GILBERT, J.**—Here we hold that security interests in real estate leases are not governed by the Commercial Code.[1] Nevertheless, we also hold that a UCC-1 financing statement which specifically states that it covers a leasehold interest, may be sufficient to constitute a leasehold mortgage.

We affirm the judgment of the trial court entered pursuant to the defendants' motion for judgment on the pleadings.

### FACTS

In 1981 plaintiffs William and Verneddral Lovelady leased property pursuant to a written agreement in the City of Fillmore for the purpose of operating their restaurant, "Henry's." The lease term extended through 2025.

In 1985 Loop's Hospitality Corporation agreed to purchase the Loveladys' business, including the lease. The agreement provided for a note of $214,644

---

[1]All statutory references are to the California Uniform Commercial Code unless otherwise stated.

in favor of the Loveladys to be ". . . secured by a UCC statement . . . ." The agreement was negotiated with the aid of the Loveladys' broker, Eric Marsh.

Escrow was opened with Bryson Escrow, Inc. The instructions prepared by Bryson stated that the note would be secured by a security agreement in the fixtures, equipment and leasehold interest. The instructions also provided that a form UCC-1 would be filed with the California Secretary of State and recorded in the county where the property is located.

The Loveladys' broker, Marsh, orally assured the Loveladys that payment of the note would be secured by a properly perfected security interest in the lease. Bryson through its escrow officer also gave oral assurances that the Loveladys could regain the lease if the note was not paid.

At close of escrow a UCC-1 financing statement was recorded in the official records of Ventura County. The financing statement said it covered, "Fixtures, Equipment, and Leasehold Interest in that certain restaurant business known as Henrys . . . ." The statement also contained a legal description of the real property subject to the lease. It identified Loop's and Arthur and Kathy Luper as "debtor" and the Loveladys as "secured party." It was signed by all parties.

Loop's defaulted on the note in May of 1989, and filed for protection under chapter 11 of the Bankruptcy Act. In June of 1990 the bankruptcy court entered, over the Loveladys' objection, an order approving Loop's assumption of the lease. Loop's converted to chapter 7 in February of 1991.

The trustee in bankruptcy found a buyer for the restaurant. The trustee told the Loveladys that he would not contest their claim of a secured interest if the Loveladys would agree to accept a note for a lesser amount. Believing they would receive nothing if they contested the matter and lost, the Loveladys agreed to the compromise.

The Loveladys brought the instant action against their broker, the escrow company and the escrow officer for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty and negligence. The defendants moved for judgment on the pleadings on the ground, among others, that the Loveladys received a perfected security interest in the lease. The trial court granted the motion.

## DISCUSSION

A motion for judgment on the pleadings is in the nature of a general demurrer. (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without

Trial, § 161, p. 563.) Thus the pleader's allegations must be accepted as true and liberally construed in his favor. (*Heredia* v. *Farmers Ins. Exchange* (1991) 228 Cal.App.3d 1345, 1358 [279 Cal.Rptr. 511].)

## I.

The usual method for securing an obligation on a lease of real property is by deed of trust. (See Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 1990) § 1.32, p. 40.) Nevertheless, the defendants argue that because a lease is a chattel, obligations may be secured by it under the Commercial Code.

Section 9104, subdivision (j) provides in part that the secured transactions division of the Commercial Code does not apply to, "the creation or transfer of an interest in or lien on real estate, including a lease . . . ." Because the parties here intended to create an interest in or lien on a lease, the subdivision disposes of the defendants' argument.

Not easily dissuaded, defendants point to section 9102, subdivision (3). That subdivision provides, "The application of this division to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this division does not apply."

Official comment 4 to the Uniform Commercial Code gives the following illustration for subdivision (3) of section 9102: "The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage. . . ."

Had the Loveladys pledged the note to secure their own obligation to a third party, the Commercial Code would govern the pledge pursuant to section 9102, subdivision (3). But that is not what happened here. The Commercial Code simply does not govern the creation of a real estate mortgage, including a leasehold mortgage.

## II.

The defendants next contend that even if the Commercial Code does not apply, the UCC-1 financing statement contains all the essential elements of a real estate mortgage.

■ Civil Code section 2922 provides that a mortgage must be in writing, and "executed with the formalities required in the case of a grant of real property." But no particular form is required. (3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 31, p. 546.) Civil Code section 2948[2] specifies a form which "may" be used. But the word "may" in the statute shows that the form is not mandatory.

■ The Loveladys claim the UCC-1 is insufficient to constitute a real property mortgage in that there is no statement the property described is security for the payment of a debt and there is no reference to the amount of the debt. The only authority cited by the Loveladys in support of their claim that such elements are essential to a real property mortgage is that the elements appear in the form provided in Civil Code section 2948. Because use of the form is not mandatory, the argument is not convincing.

Here the UCC-1 statement expressly provides that it covers a leasehold interest in the subject premises. The premises are described. The Loveladys are identified in the statement as the "secured party." Loop's and the Lupers are identified as "debtor." The form was signed by the parties. The only reasonable conclusion from reading the instrument is that the debt is intended to be secured by the leasehold. That the amount of the debt is not stated should not be fatal to the creation of a real estate mortgage. Under these circumstances, we conclude the UCC-1 statement recorded here is sufficient to create a leasehold mortgage.

■ Moreover, even if an instrument is defective in its formal requirements, it may still serve as a mortgage. An instrument will qualify as an "equitable mortgage" where there is an agreement to give a mortgage, an attempt to execute it and consideration. (3 Witkin, Summary of Cal. Law, *supra*, Security Transactions in Real Property, § 13, p. 526.) This is true even if the parties deliberately choose not to execute a formal mortgage or deed of trust, if it otherwise appears the parties intended to create a security interest. (*Ibid.*; *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311, 314 [38 Cal.Rptr. 505, 392 P.2d 265] [agreement not to encumber or transfer property treated as a mortgage].)

■ The Loveladys argue that the concept of an equitable mortgage has no application to transactions governed by the Commercial Code. (Citing

---

[2]Section 2948 provides: A mortgage of real property may be made in substantially the following form:

This mortgage, made the ____ day of ____, in the year ____, by A B, of ____, mortgagor, to C D, of ____, mortgagee, witnesseth:

That the mortgagor mortgages to the mortgagee [here describe the property], as security for the payment to him of ____ dollars, on [or before] the ____ day of ____, in the year ____, with interest thereon [or as security for the payment of an obligation, describing it, etc.] A.B.

*Shelton* v. *Erwin* (8th Cir. 1973) 472 F.2d 1118.) This may be true, but the argument misses the point. The instant case involves the intent to create a real estate mortgage, a transaction which incidentally is not governed by the Commercial Code.

Nor is there merit to the Loveladys' contention that the recording of the UCC-1 form failed to perfect their lien. They argue that the trustee may avoid an imperfected obligation which applicable law permits to be perfected. (11 U.S.C. § 544(a)(3).[3]) The Loveladys do not suggest, however, how a real estate mortgage can be perfected other than by its recording. Here the Loveladys recorded their mortgage in the official real property records of the county in which the property is situated. The recording is sufficient to give notice of the mortgage to anyone interested in the property, including the trustee. (See Civ. Code, § 1213.[4])

That the real estate mortgage appeared in the form of a UCC-1 financing statement is irrelevant. The form used here shows on its face that it was intended to secure an obligation on a leasehold interest; that is, it was intended to create a real estate mortgage.

The Loveladys' reliance on *In re Washington Communications Group, Inc.* (Bankr. D.C. Cir. 1981) 10 Bankr. 676 is misplaced. There the parties intended to create a security interest in a newsletter. A security interest in a newsletter is governed by the Commercial Code as a security interest in a "general intangible." No financing statement, however, was filed. The court stated that the steps mandated by the Commercial Code to perfect a security interest were not taken, and the trustee was able to avoid the security interest.

Here the security interest was not created in a newsletter, and hence was not governed by the Commercial Code. Instead, the security interest was governed by the laws of real estate mortgages. By recording the financing statement, the Loveladys took the step necessary to perfect a real estate mortgage.

---

[3] 11 United States Code section 544(a)(3) provides: "(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—[¶] . . . [¶] (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."

[4] Civil Code section 1213 provides in part: "Every conveyance of real property or an estate for years therein acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees . . . ." (Italics omitted.)

Nor are the Loveladys helped by their reliance on *Brown* v. *Johnson* (1979) 98 Cal.App.3d 844 [159 Cal.Rptr. 675]. There the vendor of a parcel of real property unilaterally created and recorded a "notice of vendor's lien." In discussing what instruments are recordable under California real estate law, the court said, "Self-serving statements recorded in a chain of title are not instruments which are operative in transferring or creating a right or title and thus do not provide constructive notice to subsequent purchasers." (*Id.* at p. 850.) Here the financing statement was not a self-serving document created by the Loveladys. It was created, signed, and delivered by the debtors. It falls squarely within the definition of instruments which may be recorded under California real estate law. Such instruments are "'. . . signed and delivered by one person to another, transferring the title to or creating a lien on property, or giving a right to a debt or duty.'" (*Id.* at p. 849, quoting *Hoag* v. *Howard* (1880) 55 Cal. 564, 565.)

The judgment is affirmed. Costs are awarded to respondents.

Stone (S. J.), P. J., and Yegan, J., concurred.

A petition for a rehearing was denied August 24, 1994.